DEXTER ASSOCIATES LIMITED *vs.* WORCESTER LERNER
SHOPS, INC.

No. 87-997.

Suffolk.    April 7, 1988. — September 19, 1988.

Present: GREANEY, C.J., GRANT, & SMITH, JJ.

*Practice, Civil,* Judgment, Entry of judgment, Relief from judgment.

In deciding a tenant's postjudgment motion for review and approval of work
undertaken or proposed pursuant to a judgment ordering the tenant to
perform certain repairs on its landlord's building, a judge could not
properly amend the judgment by increasing the tenant's affirmative
duties, where the original judgment purported to and did finally adjudi-
cate the parties' rights and where nothing in the record demonstrated
that the judge intended to retain jurisdiction of the matter beyond assuring
compliance with the rulings he had made in connection with that judg-
ment. [393-394]

CIVIL ACTION commenced in the Superior Court Department
on January 24, 1983.

The case was heard by *Richard F. Connon,* J., sitting under
statutory authority, and a posttrial motion was heard by him.

*Timothy Q. Feeley* for the plaintiff.

*Roland E. Shaine* for the defendant.

SMITH, J. Dexter Associates Limited (Dexter) is the owner,
since May 24, 1982, of two adjoining buildings on Washington
Street in Boston. The smaller of the two buildings, known as
the Ditson building, is ten stories high and is located at 449-451
Washington Street. The larger building is eleven stories high
and is located at 453-463 Washington Street. It is known as
the Dexter building. Worcester Lerner Shops, Inc. (Lerner),
is the successor lessee of both properties under a fifty-year
lease dated May 28, 1946. After Dexter bought the properties
in 1982, a dispute arose between it and Lerner concerning a
provision in the lease. The facts that formed the background
of the controversy between the parties are not in dispute.

At the time the lease was executed in 1946 and for some time thereafter, the upper floors of both buildings were occupied by business tenants. Because of a high vacancy rate in the 1960's, Lerner decided that it was economically infeasible to continue to sublet space on the upper floors of both buildings and by October 31, 1973, vacated all floors in both buildings except those needed for its operations and those of a restaurant. In order to curtail costs of maintaining the buildings, Lerner disconnected heat, water, and electricity to the vacated portions of the two buildings. Over the years these portions of the buildings that had been vacated deteriorated because of the seepage of water and the effects of lack of heat in the winter season.

Prior to Dexter's purchase of the buildings on May 24, 1982, it inspected both properties on five occasions. On June 18, 1982, it sent a notice of default to Lerner. Among various conditions of default, the letter noted that Lerner had failed to abide by the repair provisions of paragraph six of the lease, set out in the margin.[1] Attached to the letter was a schedule intended to set forth generally certain of the main categories of required repairs. Lerner responded by letter that certain repairs had been undertaken, but that the remaining requests were unreasonable and not within the repair obligations of the lease.

Dexter then brought a complaint in the Superior Court against Lerner, seeking declaratory and injunctive relief. In its complaint Dexter requested, among other things, a declaration that the lease provision (note 1) "imposes an affirmative duty upon Lerner to repair the [buildings] as required whether those repairs

---

[1] Paragraph six of the lease reads in pertinent part: "Lessee shall make and is hereby given the right to make all repairs, alterations or changes of every kind and nature that it may desire or that may be required to the premises during the term hereof regardless of the extent thereof and whether the same be structural, ordinary, extraordinary, or of any other nature and regardless of how the same may be necessitated; provided, however, that in no event shall the value of the land and buildings or improvements on said premises be reduced thereby nor during the last fifteen (15) years of the term hereof shall the character thereof be changed from a retail commercial property and office building without the written consent of the Lessor."

be structural, ordinary, extraordinary, or of any other nature." Dexter also requested a declaration that the lease provision required "Lerner to make all necessary repairs which reasonably would be required to keep the [buildings] in proper, tenantable condition."

The matter was tried before a judge sitting without jury. After the trial, he filed a memorandum of decision that contained his findings of fact and rulings. The judge rejected any interpretation of the lease which would have required Lerner to make all necessary repairs reasonably required to keep the premises in "proper tenantable condition." Instead, the judge ruled that all Lerner was required to do was "repair as necessary to insure that the buildings are structurally sound and . . . repair and/or replace that which [Lerner] caused to have disconnected in 1973, which includes the electrical, plumbing, heat, and water, and that said repairs and/or replacement be done in accordance with applicable building codes and to prevent waste." The judge also ruled that Lerner must restore heat to the vacant floors in both buildings and remove all debris from the premises and floors that are vacant and keep them broom clean during the remainder of the lease.

Judgment entered on July 25, 1985, in accordance with the judge's findings. In the judgment he ordered Lerner to file within ninety days, for his approval, "a detailed description of the work which [Lerner] proposes to perform or has performed in order to comply with the terms of this order, including plans or specifications sufficient to enable the defendant to obtain a building permit *required* for *any proposed* work *not* performed within such ninety (90) days" (emphasis in original). Neither party appealed from the judgment.

The ninety-day period was extended by the parties to January 10, 1986. On January 9, 1986, Lerner filed a document entitled "Description of Work Proposed or Performed by [Lerner] to Comply With Order of July 25, 1985." In that document Lerner reported that "it has performed the work hereinafter described and that, such work constituting full compliance with the terms of the said judgment and the order therein contained, no additional work is proposed." It listed the work that it had per-

Dexter Associates Ltd. *v.* Worcester Lerner Shops, Inc.

formed. Lerner then filed a motion requesting the judge to review and approve the description of work performed or proposed.

Prior to the judge's hearing on the motion, Lerner disconnected some of the elevator service in both buildings. The Dexter building has two passenger elevators and one freight elevator; the Ditson building has one passenger and one freight elevator. The freight elevator in the Dexter building was decommissioned by Lerner in 1986. Lerner then informed Dexter that it planned later to decommission the passenger elevator in the Ditson building.

The judge heard arguments by the parties on May 19, 1987, in regard to Lerner's motion. During the hearing, Dexter filed a proposed order with the judge in which it requested that the judge order that Lerner repair and restore elevator service in both buildings.

On June 5, 1987, the judge issued his decision in regard to Lerner's motion to review and approve the description of its work. In his order, the judge ruled that Lerner must repair and restore the freight elevator service in the Dexter building. He refused, however, to order Lerner to restore the passenger elevator in the Ditson building. Both parties have appealed from the June 5, 1987, order.

Lerner claims that the judge erred in ordering it to repair and restore elevator service in the Dexter building because that order, issued on June 5, 1987, came after final judgment in the case was entered on July 25, 1985. According to Lerner, a final judgment cannot be modified or changed by a postjudgment order. Dexter contends that the trial judge had retained jurisdiction over the matter and that the July 25, 1985, "judgment was not a final judgment and therefore could be modified by the judge at any time prior to the entry of final judgment." Thus, Dexter argues, the judge erred in not ordering in his June 5, 1987, order that Lerner repair and restore passenger elevator service in the Ditson building.

According to Mass.R.Civ.P. 54(a), 365 Mass. 820 (1974), the term "final judgment . . . mean[s] the act of the trial court finally adjudicating the rights of the parties affected by the

judgment. . . ." Here, the judgment that entered on July 25, 1985, in response to Dexter's complaint specifically stated that all that Lerner was required to do under the lease was "to repair and/or replace that which [Lerner] caused to have disconnected in 1973, which includes the electrical, plumbing, heat and water." The judgment also stated that Lerner was not obligated to put the premises in proper "tenantable condition." Therefore, with respect to those matters tried, the judgment purported to be and was an "act of the trial court finally adjudicating the rights of the parties affected." All that remained was the collateral matter of compliance by Lerner with the judge's declaration of the rights of the parties.

Once final judgment entered on July 25, 1985, any change in it could be made only in accordance with the procedures established for that purpose, such as provided by Mass. R.Civ.P. 52(b), 59, and 60, 365 Mass. 816, 826, and 828 (1974). The only matter before the judge in 1987 was Lerner's motion requesting a review and approval of its work that had been or would be performed as ordered in the July 25, 1985, judgment. Clearly, it was not a motion to change or amend that judgment.

The July 25, 1985, judgment ordered Lerner to repair and replace that which it had disconnected in 1973. The elevator service that Lerner was ordered to restore in the June 5, 1987, order was not decommissioned in 1973 but in 1986. Therefore, the effect of the postjudgment order was to change the final judgment entered on July 25, 1985. This was error because a postjudgment order cannot attack the underlying final judgment.[2] *Inmates of the Suffolk County Jail* v. *Eisenstadt*, 494 F.2d 1196, 1199 (1st Cir. 1974).

There is nothing in this record that demonstrates that the judge intended to retain jurisdiction of the case beyond ensuring compliance with his rulings that were made in relation to the July 25, 1985, judgment.

---

[2] A separate action might well lie to address the elevator decommissioning in 1986.

The order entered on June 5, 1987, is reversed. The matter is remanded to the Superior Court for the entry of an order approving the work performed by Lerner as constituting full compliance with the terms of the judgment.

*So ordered.*