**INMATES OF the SUFFOLK COUNTY JAIL et al., Plaintiffs, Appellees,**

**v.**

**Thomas S. EISENSTADT, etc., et al., Defendants, Appellees,**

**Frank A. Hall, Defendant, Appellant.**

**No. 73–1377.**

United States Court of Appeals, First Circuit.

Heard March 6, 1974.

Decided April 8, 1974.

Terence P. O'Malley, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., and Walter H. Mayo, III, Asst. Atty. Gen. were on brief, for appellant.

Max D. Stern, Boston, Mass., with whom Burnham, Stern & Shapiro, Mat-thew Feinberg, Boston, Mass., and Stanley A. Bass, NAACP Legal Defense & Educational Fund, New York City, were on brief, for Inmates of Suffolk County Jail, appellees.

Lawrence J. Ball, Asst. Corp. Counsel, Boston, Mass., with whom Kevin F. Moloney, Asst. Corp. Counsel, Boston, Mass., was on brief, for Sheriff of Suffolk County, and others, appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

The Massachusetts Commissioner of Correction appeals from an order of the district court entered in aid of its judgment rendered in an action brought by inmates of Boston's Charles Street Jail (the "Jail"). 360 F.Supp. 676 (D.Mass. 1973). The inmates had sued under 42 U.S.C. § 1983 complaining of unconstitutional conditions at the Jail, and the court, after extended proceedings, had found that the "quality of incarceration at Charles Street is 'punishment' of such a nature and degree that it cannot be justified by the state's interest in holding defendants for trial; and therefore it violates the due process clause of the Fourteenth Amendment." *Id.* 360 F. Supp. at 686. Defendants in the inmates' action were the Commissioner and officials of Suffolk County, including the sheriff, master of the Jail, and county commissioners. Though the Jail is administered by the county rather than the state, the Commissioner holds significant statutory responsibilities and powers relevant to the Jail, *infra.*

In the court's judgment entered June 20, 1973, from which they took no appeal, all defendants, including the Commissioner, were enjoined from housing in any cell at the Jail after November 30, 1973, more than one inmate awaiting trial. The court remarked in its opinion that achieving single cell occupancy would likely require a reduction in the population, and that defendants should consider transferring inmates to other

state and county institutions. *Id.* 360 F.Supp. at 690. The transfer of women inmates to the Massachusetts Correctional Institution, Framingham, a state facility for women controlled by the Commissioner, was mentioned as a means to free additional cells, the women's section at Charles Street being underutilized.

By mid-November, the court had been advised by the Suffolk County officials that they could not comply with the November 30 deadline for ending multiple cell occupancy since there was no place under their control to put the surplus inmates. Appellant Commissioner, doubtless hard pressed by budgetary and other constraints, offered no cooperation; yet it had become apparent that the unconstitutional crowding at the Jail could be relieved immediately only through the use of space and facilities outside Suffolk County which the Commissioner alone had the statutory power to command.[1]

Faced with the County's dilemma, the district court ordered the Commissioner to cooperate with the sheriff to arrange for a transfer of female inmates from the Jail to other institutions. The situation remained static, however, and four days later the court, after calculating the maximum number that could be accommodated at the Jail under a single cell plan, and after ascertaining that there were sufficient vacancies elsewhere for the overflow, entered the order from which the Commissioner has appealed. It requires the Commissioner to transfer all women confined at the Jail to the Massachusetts Correctional Institution at Framingham, or to any other state or county facility for the detention of women inmates, pursuant to his statutory authority to effect state-

wide transfers. The order also requires male detainees with state felony records to be transferred to other state or county institutions whenever needed to ensure single cell occupancy at the Jail. In its memorandum accompanying the order, the court stated that the Commissioner was "the only person in the Commonwealth" in a position to arrange for the confinement of the women inmates elsewhere than at the Jail; and likewise that only the Commissioner had the necessary authority to transfer male detainees.

Appeal from the order was taken solely by the Commissioner. Suffolk County officials support it. We hold the order to be valid.

Appellant does not argue to us that unconstitutional conditions at the Jail could be better relieved by a different plan, or that facilities exist in Suffolk County for the surplus inmates. Indeed, he could scarcely do so, since the court entered the order only after the Commissioner and other defendants were unable to come up with any reasonable alternative. Nor does appellant claim that compliance is impossible.

Appellant's contention is simply that the district court lacked power to order him to make transfers "without a showing of unconstitutional conduct on his part." However, appellant underestimates his own statutory duties respecting the Jail and its inmates, as well as the district court's equitable powers to remedy violations of the Constitution. *See, e. g.,* Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

When the inmates' complaint was filed, the Commissioner, besides his

---

1. M.G.L. c. 276, § 52A: "Persons held in jail for trial may, with the approval of the district attorney . . . be removed by the commissioner of correction to a jail in another county . . . . In addition, such persons, if they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony, may, with the approval of the district attorney, be removed by the commissioner of correction

to a correctional institution of the commonwealth, . . . . ."

M.G.L. c. 127, § 97: "The commissioner may transfer any sentenced prisoner . . . with the approval of the sheriff of the county . . . from any jail or house of correction to any such [state correctional] institution . . . or from any jail or house of correction to any other jail or house of correction."

unique state-wide transfer powers, had "general supervision of jails and houses of correction," M.G.L. c. 124, § 1(a). This has recently been sharpened to present language directing him to "establish . . . minimum standards for the care and custody of all persons committed to county correctional facilities",[2] and to secure compliance with such standards. M.G.L. c. 127, § 1A. *See also* M.G.L. c. 127, § 1B; c. 124, §§ 1(d), (q). He is also authorized to inspect county institutions, and county officials are, in turn, to report annually to him. M.G.L. c. 127, §§ 1B, 10. His powers at such facilities further extend to prisoner classification, *id.* § 21, and the furnishing of consultation services, technical assistance, and grants-in-aid, *id.* § 1A. In sum, while the day-to-day funding and management comes from the county, the Commissioner has major statutory responsibilities bearing precisely on the issues raised in the inmates' suit.

It is apparent why authority has been so centralized. The county jails and institutions are part of a state-wide system of detention and corrections. The Jail holds those awaiting felony trials in a major session of the state court. Many detainees will thereafter serve their sentences in state institutions managed by the Commissioner. Inmates and their records are moved daily between state-managed and county-managed institutions. The Jail cannot be viewed in splendid isolation from the rest of the Commonwealth.

Given both the practicalities of the situation and his statutory role, the Commissioner may not disavow any responsibility for conditions at the Jail or from reasonable measures to bring them up to constitutional standards. The question is not one of his personal fault; an official may be enjoined without proof of fault. "The result, not the specific intent, is what matters." Rozecki v. Gaughan, 459 F.2d 6, 8 (1st Cir.

1972). Nor is there refuge in the distinction between malfeasance and nonfeasance. *See* Schnell v. City of Chicago, 407 F.2d 1084 (7th Cir. 1969). Doubtless there comes a point at which an official, having no statutory responsibility whatever over certain matters, has a right not to be forced to participate in a rescue operation; but this case does not even approach that point.

The Commissioner's links with county institutions in the integrated system are more than enough to support remedial relief of this nature. *See* Washington v. Lee, 263 F.Supp. 327, 332–333 (N.D. Ala.1966) (three-judge court), aff'd 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). *Cf.* Griffin v. County School Board, 377 U.S. 218, 232–233, 84 S.Ct. 226, 12 L.Ed.2d 256 (1964); Hart v. Community School Board, 42 U.S.L.W. 2428, 2429 (E.D.N.Y. Feb. 19, 1974). The district court allowed the defendants a fair chance to work out remedies among themselves; and doubtless it will continue to respect the expertise of the Commissioner and the practical difficulties he may face. But it need not perpetuate inhuman conditions out of an overly-nice solicitude for the division of powers and duties between county and state officials where together they share a joint responsibility for the proper functioning of the Jail.

■ The Commissioner's legal position is additionally weakened by his failure to appeal from the judgment of the district court. There is independent merit to appellees' argument that the Commissioner is now foreclosed from claiming that he is not a proper party to this action and that no injunction could be issued against him. F.R.A.P. 3, 4. On appeal from a collateral order, the underlying judgment is immune from attack. 9 J. Moore, Federal Practice ¶ 110.14[1] (2d ed. 1973). Furthermore, prior to entry of the final judgment the Commissioner had unsuccessfully moved to dismiss on essentially the same

---

2. The term "county correctional facilities" covers jails as well as county houses of correction. M.G.L. c. 125, § 1(d), (f); c. 126, § 4.

ground advanced here; had he wished to preserve the point, he should have appealed from the judgment. But whether the appeal is narrowed, or whether it is seen as raising the broader issue asserted by the Commissioner, we find it to be without merit.

Affirmed.