# HELLING ET AL. *v.* McKINNEY

No. 91–1958.   Argued January 13, 1993—Decided June 18, 1993

26

WHITE, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BLACKMUN, STEVENS, O'CONNOR, KENNEDY, and SOUTER, JJ., joined. THOMAS, J., filed a dissenting opinion, in which SCALIA, J., joined, *post*, p. 37.

*Frankie Sue Del Papa*, Attorney General of Nevada, argued the cause for petitioners. With her on the briefs were *Brooke A. Nielsen*, Assistant Attorney General, *David F. Sarnowski*, Chief Deputy Attorney General, and *Anne B. Cathcart*, Deputy Attorney General.

*Deputy Solicitor General Roberts* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Starr*, *Assistant Attorney General Gerson*, *Edwin S. Kneedler*, *William Kanter*, and *Peter R. Maier*.

*Cornish F. Hitchcock* argued the cause for respondent. With him on the brief was *Alan B. Morrison.**

JUSTICE WHITE delivered the opinion of the Court.

This case requires us to decide whether the health risk posed by involuntary exposure of a prison inmate to environ-

---

*A brief of *amici curiae* urging reversal was filed for the State of Hawaii et al. by *Warren Price III,* Attorney General of Hawaii, and *Steven S. Michaels,* Deputy Attorney General, *James Evans,* Attorney General of Alabama, *Charles E. Cole,* Attorney General of Alaska, *Grant Woods,* Attorney General of Arizona, *Winston Bryant,* Attorney General of Arkansas, *Gale A. Norton,* Attorney General of Colorado, *Robert A. Butterworth,* Attorney General of Florida, *Michael J. Bowers,* Attorney General of Georgia, *Larry EchoHawk,* Attorney General of Idaho, *Roland W. Burris,* Attorney General of Illinois, *Linley E. Pearson,* Attorney General of Indiana, *Robert T. Stephan,* Attorney General of Kansas, *Chris Gorman,* Attorney General of Kentucky, *Michael E. Carpenter,* Attorney General of Maine, *J. Joseph Curran, Jr.,* Attorney General of Maryland, *Scott Harshbarger,* Attorney General of Massachusetts, *Mike Moore,* Attorney General of Mississippi, *William Webster,* Attorney General of Missouri, *Marc Racicot,* Attorney General of Montana, *John P. Arnold,* Attorney General of New Hampshire, *Robert J. Del Tufo,* Attorney General of New Jersey, *Tom Udall,* Attorney General of New Mexico, *Lacy H. Thornburg,* Attorney General of North Carolina, *Nicholas J. Spaeth,* Attorney General of North Dakota, *Charles S. Crookham,* Attorney General of Oregon, *Ernest D. Preate, Jr.,* Attorney General of Pennsylvania, *Travis Medlock,* Attorney General of South Carolina, *Mark Barnett,* Attorney General of South Dakota, *Charles W. Burson,* Attorney General of Tennessee, *Paul Van Dam,* Attorney General of Utah, *Mary Sue Terry,* Attorney General of Virginia, *Mario J. Palumbo,* Attorney General of West Virginia, *James E. Doyle,* Attorney General of Wisconsin, *Joseph B. Meyer,* Attorney General of Wyoming, *John Payton,* Corporation Counsel of District of Columbia, and *Charles Reischel,* Deputy Corporation Counsel, *Jorge Perez-Diaz,* Attorney General of Puerto Rico, *Tautai A. F. Fa'alevao,* Attorney General of American Samoa, *Elizabeth Barrett-Anderson,* Attorney General of Guam, and *Rosalie Simmonds Ballentine,* Attorney General of the Virgin Islands.

*John A. Powell, Steven A. Shapiro,* and *David C. Fathi* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

mental tobacco smoke (ETS) can form the basis of a claim for relief under the Eighth Amendment.

## I

Respondent is serving a sentence of imprisonment in the Nevada prison system. At the time that this case arose, respondent was an inmate in the Nevada State Prison in Carson City, Nevada. Respondent filed a *pro se* civil rights complaint in United States District Court under Rev. Stat. § 1979, 42 U. S. C. § 1983, naming as defendants the director of the prison, the warden, the associate warden, a unit counselor, and the manager of the prison store. The complaint, dated December 18, 1986, alleged that respondent was assigned to a cell with another inmate who smoked five packs of cigarettes a day. App. 6. The complaint also stated that cigarettes were sold to inmates without properly informing of the health hazards a nonsmoking inmate would encounter by sharing a room with an inmate who smoked, *id.*, at 7–8, and that certain cigarettes burned continuously, releasing some type of chemical, *id.*, at 9. Respondent complained of certain health problems allegedly caused by exposure to cigarette smoke. Respondent sought injunctive relief and damages for, *inter alia*, subjecting him to cruel and unusual punishment by jeopardizing his health. *Id.*, at 14.

The parties consented to a jury trial before a Magistrate. The Magistrate viewed respondent's suit as presenting two issues of law: (1) whether respondent had a constitutional right to be housed in a smoke-free environment, and (2) whether defendants were deliberately indifferent to respondent's serious medical needs. App. to Pet. for Cert. D2–D3. The Magistrate, after citing applicable authority, concluded that respondent had no constitutional right to be free from cigarette smoke: While "society may be moving toward an opinion as to the propriety of non-smoking and a smoke-free environment," society cannot yet completely agree on the resolution of these issues. *Id.*, at D3, D6. The Magistrate

found that respondent nonetheless could state a claim for deliberate indifference to serious medical needs if he could prove the underlying facts, but held that respondent had failed to present evidence showing either medical problems that were traceable to cigarette smoke or deliberate indifference to them. *Id.*, at D6–D10. The Magistrate therefore granted petitioners' motion for a directed verdict and granted judgment for the defendants. *Id.*, at D10.

The Court of Appeals affirmed the Magistrate's grant of a directed verdict on the issue of deliberate indifference to respondent's immediate medical symptoms. *McKinney* v. *Anderson*, 924 F. 2d 1500, 1512 (CA9 1991). The Court of Appeals also held that the defendants were immune from liability for damages since there was at the time no clearly established law imposing liability for exposing prisoners to ETS.* Although it agreed that respondent did not have a constitutional right to a smoke-free prison environment, the court held that respondent had stated a valid cause of action under the Eighth Amendment by alleging that he had been involuntarily exposed to levels of ETS that posed an unreasonable risk of harm to his future health. *Id.*, at 1509. In support of this judgment, the court noticed scientific opinion supporting respondent's claim that sufficient exposure to ETS could endanger one's health. *Id.*, at 1505–1507. The court also concluded that society's attitude had evolved to the point that involuntary exposure to unreasonably dangerous levels of ETS violated current standards of decency. *Id.*, at 1508. The court therefore held that the Magistrate erred by directing a verdict without permitting respondent to prove that his exposure to ETS was sufficient to constitute an unreasonable danger to his future health.

Petitioners sought review in this Court. In the meantime, this Court had decided *Wilson* v. *Seiter*, 501 U. S. 294 (1991), which held that, while the Eighth Amendment applies

---

*This was true of the defendants' alleged liability for housing respondent with a cellmate who smoked five packs of cigarettes each day.

to conditions of confinement that are not formally imposed as a sentence for a crime, such claims require proof of a subjective component, and that where the claim alleges inhumane conditions of confinement or failure to attend to a prisoner's medical needs, the standard for that state of mind is the "deliberate indifference" standard of *Estelle* v. *Gamble*, 429 U. S. 97 (1976). We granted certiorari in this case, vacated the judgment below, and remanded the case to the Court of Appeals for further consideration in light of *Seiter*. 502 U. S. 903 (1991).

On remand, the Court of Appeals noted that *Seiter* added an additional subjective element that respondent had to prove to make out an Eighth Amendment claim, but did not vitiate its determination that it would be cruel and unusual punishment to house a prisoner in an environment exposing him to levels of ETS that pose an unreasonable risk of harming his health—the objective component of respondent's Eighth Amendment claim. *McKinney* v. *Anderson*, 959 F. 2d 853, 854 (CA9 1992). The Court of Appeals therefore reinstated its previous judgment and remanded for proceedings consistent with its prior opinion and with *Seiter*. 959 F. 2d, at 854.

Petitioners again sought review in this Court, contending that the decision below was in conflict with the en banc decision of the Court of Appeals for the Tenth Circuit in *Clemmons* v. *Bohannon*, 956 F. 2d 1523 (1992). We granted certiorari. 505 U. S. 1218 (1992). We affirm.

II

The petition for certiorari which we granted not only challenged the Court of Appeals' holding that respondent had stated a valid Eighth Amendment claim, but also asserted, as did its previous petition, that it was improper for the Court of Appeals to decide the question at all. Pet. for Cert. 25–29. Petitioners claim that respondent's complaint rested only on the alleged current effects of exposure to cigarette

smoke, not on the possible future effects; that the issues framed for trial were likewise devoid of such an issue; and that such a claim was not presented, briefed, or argued on appeal and that the Court of Appeals erred in *sua sponte* deciding it. *Ibid.* Brief for Petitioners 46–49. The Court of Appeals was apparently of the view that the claimed entitlement to a smoke-free environment subsumed the claim that exposure to ETS could endanger one's future health. From its examination of the record, the court stated that "[b]oth before and during trial, McKinney sought to litigate the degree of his exposure to ETS and the actual and potential effects of such exposure on his health," 924 F. 2d, at 1503; stated that the Magistrate had excluded evidence relating to the potential health effects of exposure to ETS; and noted that two of the issues on appeal addressed whether the Magistrate erred in holding as a matter of law that compelled exposure to ETS does not violate a prisoner's rights and whether it was error to refuse to appoint an expert witness to testify about the health effects of such exposure. While the record is ambiguous and the Court of Appeals might well have affirmed the Magistrate, we hesitate to dispose of this case on the basis that the court misread the record before it. We passed over the same claim when we vacated the judgment below and remanded when the case was first before us, Pet. for Cert., O. T. 1991, No. 91–269, pp. 23–26, and the primary question on which certiorari was granted, and the question to which petitioners have devoted the bulk of their briefing and argument, is whether the court below erred in holding that McKinney had stated an Eighth Amendment claim on which relief could be granted by alleging that his compelled exposure to ETS poses an unreasonable risk to his health.

### III

It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. As we said

in *DeShaney* v. *Winnebago County Dept. of Social Services*, 489 U. S. 189, 199–200 (1989):

> "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e. g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment . . . ."

Contemporary standards of decency require no less. *Estelle* v. *Gamble*, 429 U. S., at 103–104. In *Estelle*, we concluded that although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to serious medical needs of prisoners" violates the Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Id.*, at 104. *Wilson* v. *Seiter*, 501 U. S. 294 (1991), later held that a claim that the conditions of a prisoner's confinement violate the Eighth Amendment requires an inquiry into the prison officials' state of mind. " 'Whether one characterizes the treatment received by [the prisoner] as inhuman conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the "deliberate indifference" standard articulated in *Estelle.*' " *Id.*, at 303.

Petitioners are well aware of these decisions, but they earnestly submit that unless McKinney can prove that he is currently suffering serious medical problems caused by exposure to ETS, there can be no violation of the Eighth Amendment. That Amendment, it is urged, does not pro-

tect against prison conditions that merely threaten to cause health problems in the future, no matter how grave and imminent the threat.

We have great difficulty agreeing that prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year. In *Hutto* v. *Finney*, 437 U. S. 678, 682 (1978), we noted that inmates in punitive isolation were crowded into cells and that some of them had infectious maladies such as hepatitis and venereal disease. This was one of the prison conditions for which the Eighth Amendment required a remedy, even though it was not alleged that the likely harm would occur immediately and even though the possible infection might not affect all of those exposed. We would think that a prison inmate also could successfully complain about demonstrably unsafe drinking water without waiting for an attack of dysentery. Nor can we hold that prison officials may be deliberately indifferent to the exposure of inmates to a serious, communicable disease on the ground that the complaining inmate shows no serious current symptoms.

That the Eighth Amendment protects against future harm to inmates is not a novel proposition. The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is "reasonable safety." *DeShaney, supra,* at 200. It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Youngberg* v. *Romeo,* 457 U. S. 307, 315–316 (1982). It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them. The Courts of Appeals have plainly recognized that a remedy for unsafe conditions need not await a tragic event. Two of them were cited with approval in *Rhodes* v. *Chapman,* 452 U. S. 337, 352, n. 17 (1981). *Gates* v. *Collier,* 501 F. 2d 1291

(CA5 1974), held that inmates were entitled to relief under the Eighth Amendment when they proved threats to personal safety from exposed electrical wiring, deficient firefighting measures, and the mingling of inmates with serious contagious diseases with other prison inmates. *Ramos* v. *Lamm*, 639 F. 2d 559, 572 (CA10 1980), stated that a prisoner need not wait until he is actually assaulted before obtaining relief. As respondent points out, the Court of Appeals cases to the effect that the Eighth Amendment protects against sufficiently imminent dangers as well as current unnecessary and wanton infliction of pain and suffering are legion. See Brief for Respondent 24–27. We thus reject petitioners' central thesis that only deliberate indifference to current serious health problems of inmates is actionable under the Eighth Amendment.

The United States as *amicus curiae* supporting petitioners does not contend that the Amendment permits "even those conditions of confinement that truly pose a significant risk of proximate and substantial harm to an inmate, so long as the injury has not yet occurred and the inmate does not yet suffer from its effects." Brief for United States as *Amicus Curiae* 19. *Hutto* v. *Finney*, the United States observes, teaches as much. The Government recognizes that there may be situations in which exposure to toxic or similar substances would "present a risk of sufficient likelihood or magnitude—and in which there is a sufficiently broad consensus that exposure of *anyone* to the substance should therefore be prevented—that" the Amendment's protection would be available even though the effects of exposure might not be manifested for some time. Brief for United States as *Amicus Curiae* 19. But the United States submits that the harm to any particular individual from exposure to ETS is speculative, that the risk is not sufficiently grave to implicate a "'serious medical nee[d],'" and that exposure to ETS is not contrary to current standards of decency. *Id.*, at 20–22. It would be premature for us, however, as a matter of law to

reverse the Court of Appeals on the basis suggested by the United States. The Court of Appeals has ruled that McKinney's claim is that the level of ETS to which he has been involuntarily exposed is such that his future health is unreasonably endangered and has remanded to permit McKinney to attempt to prove his case. In the course of such proof, he must also establish that it is contrary to current standards of decency for anyone to be so exposed against his will and that prison officials are deliberately indifferent to his plight. We cannot rule at this juncture that it will be impossible for McKinney, on remand, to prove an Eighth Amendment violation based on exposure to ETS.

## IV

We affirm the holding of the Court of Appeals that McKinney states a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health. We also affirm the remand to the District Court to provide an opportunity for McKinney to prove his allegations, which will require him to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation. The District Court will have the usual authority to control the order of proof, and if there is a failure of proof on the first element that it chooses to consider, it would not be an abuse of discretion to give judgment for petitioners without taking further evidence. McKinney must also prove that he is entitled to the remedy of an injunction.

With respect to the objective factor, McKinney must show that he himself is being exposed to unreasonably high levels of ETS. Plainly relevant to this determination is the fact that McKinney has been moved from Carson City to Ely State Prison and is no longer the cellmate of a five-pack-a-day smoker. While he is subject to being moved back to Carson City and to being placed again in a cell with a heavy

smoker, the fact is that at present he is not so exposed. Moreover, the director of the Nevada State Prisons adopted a formal smoking policy on January 10, 1992. This policy restricts smoking in "program, food preparation/serving, recreational and medical areas" to specifically designated areas. It further provides that wardens may, contingent on space availability, designate nonsmoking areas in dormitory settings, and that institutional classification committees may make reasonable efforts to respect the wishes of nonsmokers where double bunking obtains. See App. to Brief for United States as *Amicus Curiae* A1–A2. It is possible that the new policy will be administered in a way that will minimize the risk to McKinney and make it impossible for him to prove that he will be exposed to unreasonable risk with respect to his future health or that he is now entitled to an injunction.

Also with respect to the objective factor, determining whether McKinney's conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.

On remand, the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct, which may have changed considerably since the judgment of the Court of Appeals. Indeed, the adoption of the smoking policy mentioned above will bear heavily on the inquiry into deliberate indifference. In this respect we note that at oral argument McKinney's counsel was of the view that depending on how the new policy was administered, it could be very difficult to demonstrate that

prison authorities are ignoring the possible dangers posed by exposure to ETS. Tr. of Oral Arg. 33. The inquiry into this factor also would be an appropriate vehicle to consider arguments regarding the realities of prison administration.

## V

The judgment of the Court of Appeals is affirmed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE THOMAS, with whom JUSTICE SCALIA joins, dissenting.

Last Term, in *Hudson* v. *McMillian,* 503 U. S. 1 (1992), the Court held that the Eighth Amendment prohibits the use of force that causes a prisoner only minor injuries. Believing that the Court had expanded the Eighth Amendment "beyond all bounds of history and precedent," *id.,* at 28, I dissented. Today the Court expands the Eighth Amendment in yet another direction, holding that it applies to a prisoner's mere *risk* of injury. Because I find this holding no more acceptable than the Court's holding in *Hudson,* I again dissent.

## I

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Court holds that a prisoner states a cause of action under the Cruel and Unusual Punishments Clause by alleging that prison officials, with deliberate indifference, have exposed him to an unreasonable risk of harm. This decision, like every other "conditions of confinement" case since *Estelle* v. *Gamble,* 429 U. S. 97 (1976), rests on the premise that deprivations suffered by a prisoner constitute "punishmen[t]" for Eighth Amendment purposes, even when the deprivations have not been inflicted as part of a criminal sentence. As I suggested in *Hudson,*

see 503 U. S., at 18–20, I have serious doubts about this premise.

A

At the time the Eighth Amendment was ratified, the word "punishment" referred to the penalty imposed for the commission of a crime. See 2 T. Cunningham, A New and Complete Law-Dictionary (1771) ("the penalty of transgressing the laws"); 2 T. Sheridan, A General Dictionary of the English Language (1780) ("[a]ny infliction imposed in vengeance of a crime"); J. Walker, A Critical Pronouncing Dictionary (1791) (same); 4 G. Jacob, The Law-Dictionary: Explaining the Rise, Progress, and Present State, of the English Law 343 (1811) ("[t]he penalty for transgressing the Law"); 2 N. Webster, American Dictionary of the English Language (1828) ("[a]ny pain or suffering inflicted on a person for a crime or offense"). That is also the primary definition of the word today. As a legal term of art, "punishment" has always meant a "fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him." Black's Law Dictionary 1234 (6th ed. 1990). And this understanding of the word, of course, does not encompass a prisoner's injuries that bear no relation to his sentence.

Nor, as far as I know, is there any historical evidence indicating that the Framers and ratifiers of the Eighth Amendment had anything other than this common understanding of "punishment" in mind. There is "no doubt" that the English Declaration of Rights of 1689 is the "antecedent of our constitutional text," *Harmelin* v. *Michigan*, 501 U. S. 957, 966 (1991) (opinion of SCALIA, J.), and "the best historical evidence" suggests that the "cruell and unusuall Punishments" provision of the Declaration of Rights was a response to *sentencing* abuses of the King's Bench, *id.,* at 968. Just as there was no suggestion in English constitutional history

that harsh prison conditions might constitute cruel and unusual (or otherwise illegal) "punishment," the debates surrounding the framing and ratification of our own Constitution and Bill of Rights were silent regarding this possibility. See 2 J. Elliot, Debates on the Federal Constitution 111 (2d ed. 1854) (Congress should be prevented from "inventing the most cruel and unheard-of punishments, *and annexing them to crimes*") (emphasis added); 1 Annals of Cong. 753–754 (1789). The same can be said of the early commentaries. See 3 J. Story, Commentaries on the Constitution of the United States 750–751 (1833); T. Cooley, Constitutional Limitations 694 (8th ed. 1927).

To the extent that there is any affirmative historical evidence as to whether injuries sustained in prison might constitute "punishment" for Eighth Amendment purposes, that evidence is consistent with the ordinary meaning of the word. As of 1792, the Delaware Constitution's analogue of the Eighth Amendment provided that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted; *and in the construction of jails a proper regard shall be had to the health of prisoners.*" Del. Declaration of Rights, Art. I, § XI (1792) (emphasis added). This provision suggests that when members of the founding generation wished to make prison conditions a matter of constitutional guarantee, they knew how to do so.

Judicial interpretations of the Cruel and Unusual Punishments Clause were, until quite recently, consistent with its text and history. As I observed in *Hudson*, see 503 U. S., at 19, lower courts routinely rejected "conditions of confinement" claims well into this century, see, *e. g., Negrich* v. *Hohn*, 246 F. Supp. 173, 176 (WD Pa. 1965) ("Punishment is a penalty inflicted by a judicial tribunal in accordance with law in retribution for criminal conduct"), and this Court did not so much as intimate that the Cruel and Unusual Punishments Clause might reach prison conditions for the first 185

years of the provision's existence. It was not until the 1960's that lower courts began applying the Eighth Amendment to prison deprivations, see, *e. g., Wright* v. *McMann,* 387 F. 2d 519, 525–526 (CA2 1967); *Bethea* v. *Crouse,* 417 F. 2d 504, 507–508 (CA10 1969), and it was not until 1976, in *Estelle* v. *Gamble,* 429 U. S. 97, that this Court first did so.

Thus, although the evidence is not overwhelming, I believe that the text and history of the Eighth Amendment, together with the decisions interpreting it, support the view that judges or juries—but not jailers—impose "punishment." At a minimum, I believe that the original meaning of "punishment," the silence in the historical record, and the 185 years of uniform precedent shift the burden of persuasion to those who would apply the Eighth Amendment to prison conditions. In my view, that burden has not yet been discharged. It was certainly not discharged in *Estelle* v. *Gamble.*

B

The inmate in *Estelle* claimed that inadequate treatment of a back injury constituted cruel and unusual punishment. The Court ultimately rejected this claim, but not before recognizing that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Id.,* at 104. In essence, however, this extension of the Eighth Amendment to prison conditions rested on little more than an *ipse dixit.* There was no analysis of the text of the Eighth Amendment in *Estelle,* and the Court's discussion of the provision's history consisted of the following single sentence: "It suffices to note that the primary concern of the drafters was to proscribe 'torture[s]' and other 'barbar[ous]' methods of punishment." *Id.,* at 102. And although the Court purported to rely upon "our decisions interpreting" the Eighth Amendment, *ibid.,* none of the six cases it cited, see *id.,* at 102–103, held that the Eighth Amendment applies to prison deprivations—or, for that matter, even addressed

a claim that it does. All of those cases involved challenges to a sentence imposed for a criminal offense.[1]

The only authorities cited in *Estelle* that supported the Court's extension of the Eighth Amendment to prison deprivations were lower court decisions (virtually all of which had been decided within the previous 10 years), see *id.*, at 102, 104–105, nn. 10–12, 106, n. 14, and the only one of those decisions upon which the Court placed any substantial reliance was *Jackson* v. *Bishop*, 404 F. 2d 571 (CA8 1968). But *Jackson*, like *Estelle* itself, simply *asserted* that the Eighth Amendment applies to prison deprivations; the Eighth Circuit's discussion of the problem consisted of a two-sentence paragraph in which the court was content to state the opposing view and then reject it: "Neither do we wish to draw . . . any meaningful distinction between punishment by way of sentence statutorily prescribed and punishment imposed for prison disciplinary purposes. It seems to us that the Eighth Amendment's proscription has application to both." 404 F. 2d, at 580–581. As in *Estelle*, there was no analysis of the text or history of the Cruel and Unusual Punishments Clause.[2]

---

[1] *Gregg* v. *Georgia*, 428 U. S. 153 (1976), was a death penalty case, as were *Wilkerson* v. *Utah*, 99 U. S. 130 (1879), *In re Kemmler*, 136 U. S. 436 (1890), and *Louisiana ex rel. Francis* v. *Resweber*, 329 U. S. 459 (1947). *Weems* v. *United States*, 217 U. S. 349 (1910), involved a challenge to a sentence imposed for the crime of falsifying a document, and *Trop* v. *Dulles*, 356 U. S. 86 (1958), presented the question whether revocation of citizenship amounts to cruel and unusual punishment when imposed upon those who desert the military.

[2] *Jackson* may in any event be distinguishable. That case involved an Eighth Amendment challenge to the use of the "strap" as a disciplinary measure in Arkansas prisons, and it is at least arguable that whipping a prisoner who has violated a prison rule is sufficiently analogous to imposing a sentence for violation of a criminal law that the Eighth Amendment is implicated. But disciplinary measures for violating prison rules are quite different from inadequate medical care or housing a prisoner with a heavy smoker.

## II

To state a claim under the Cruel and Unusual Punishments Clause, a party must prove not only that the challenged conduct was both cruel and unusual, but also that it constitutes *punishment.* The text and history of the Eighth Amendment, together with pre-*Estelle* precedent, raise substantial doubts in my mind that the Eighth Amendment proscribes a prison deprivation that is not inflicted as part of a sentence. And *Estelle* itself has not dispelled these doubts. Were the issue squarely presented, therefore, I might vote to overrule *Estelle.* I need not make that decision today, however, because this case is not a straightforward application of *Estelle.* It is, instead, an extension.

In *Hudson,* the Court extended *Estelle* to cases in which the prisoner has suffered only minor injuries; here, it extends *Estelle* to cases in which there has been no injury at all.[3] Because I seriously doubt that *Estelle* was correctly decided, I decline to join the Court's holding. *Stare decisis* may call for hesitation in overruling a dubious precedent, but it does not demand that such a precedent be expanded to its outer limits. I would draw the line at actual, serious injuries and reject the claim that exposure to the *risk* of injury can violate the Eighth Amendment.

Accordingly, I would reverse the judgment of the Court of Appeals.

---

[3] None of our prior decisions, including the three that are cited by the Court today, see *ante,* at 33, held that the mere threat of injury can violate the Eighth Amendment. In *Hutto* v. *Finney,* 437 U. S. 678 (1978), the defendants challenged the district court's *remedy;* they did not dispute the court's conclusion that "conditions in [the] prisons . . . constituted cruel and unusual punishment." *Id.,* at 685. *Youngberg* v. *Romeo,* 457 U. S. 307 (1982), involved the liberty interests (under the Due Process Clause) of an involuntarily committed mentally retarded person, and *DeShaney* v. *Winnebago County Dept. of Social Services,* 489 U. S. 189 (1989), involved the due process rights of a child who had been beaten by his father in the home.