## JOHN GOOD *vs.* COMMISSIONER OF CORRECTION.

Middlesex. October 7, 1993. - March 16, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Imprisonment*, Reclassification of prisoner, Transfer of prisoner. *Constitutional Law*, Cruel and unusual punishment. *Practice, Civil*, Summary judgment, Parties.

An inmate serving a State prison sentence in Federal facilities was entitled to review of his inmate classification as required by the Department of Correction regulations set forth at 103 Code Mass. Regs. § 420.00 notwithstanding that the prisoner was not in the physical custody of the department. [331-333] ABRAMS, J., concurring, with whom NOLAN, J., joined.

The Commissioner of Correction was a proper party defendant in an action brought by a State prison inmate who was serving his sentence at a Federal facility, where the inmate sought an injunction ordering his transfer to a facility at which he would not be exposed to contaminated drinking water and where the Department of Correction maintains jurisdiction over inmates transferred to Federal custody. [333-335]

On remand of an action brought by a State prisoner claiming a violation of art. 26 of the Massachusetts Declaration of Rights (the prohibition against cruel or unusual punishments) by his confinement at a Federal penitentiary resulting in his being exposed to allegedly contaminated drinking water, if the plaintiff should demonstrate the existence of a substantial risk of his suffering serious harm as a result of the conditions of his continued confinement, the judge was to fashion an appropriate remedy. [335-337] ABRAMS, J., concurring, with whom NOLAN, J., joined, expressed her views on the issue of the applicable water standards.

CIVIL ACTION commenced in the Superior Court Department on June 11, 1990.

The case was heard by *Walter E. Steele*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kenneth J. King* (*Lowry E. Heussler* with him) for the plaintiff.

*Thomas E. Abruzzese* for the Commissioner of Correction.

*Peter Costanza & Barry Barkow*, for Massachusetts Correctional Legal Services, amicus curiae, submitted a brief.

LIACOS, C.J. The plaintiff John Good is serving a life sentence without the possibility of parole, imposed by a judge of the Superior Court after his conviction of murder in the first degree. He filed this action in the Superior Court for the county of Middlesex, invoking G. L. c. 12, §§ 11H-11J (1992 ed.), claiming that the defendant commissioner and the Department of Correction (department) denied him periodic review of his inmate classification as required by 103 Code Mass. Regs. § 420.00, and also claiming violation of art. 26 of the Massachusetts Declaration of Rights, the prohibition against cruel or unusual punishments.

The trial judge denied Good's motion to be returned to a correctional facility in the Commonwealth and granted summary judgment for the commissioner on both claims raised by Good. Good appealed. The Appeals Court affirmed the grant of summary judgment in favor of the commissioner on Good's claim under art. 26 but reversed as to his claim of denial of periodic review and remanded the case for further proceedings on that claim alone. *Good* v. *Commissioner of Correction*, 34 Mass. App. Ct. 73, 77-78 (1993). We granted the plaintiff's request for further appellate review. We agree with the Appeals Court that the trial judge improperly granted summary judgment in favor of the commissioner on Good's claim of denial of review of his inmate classification. Additionally, however, we conclude that the trial judge improperly granted summary judgment in favor of the commissioner on Good's art. 26 claim.

We recite the essential facts of this case. Good was convicted of murder in the first degree in 1988 and began serving his sentence at the Massachusetts Correctional Institution, Cedar Junction. He was transferred in 1989 to the custody of the Federal Bureau of Prisons (FBOP). After his transfer, he was held at the United States penitentiaries

(USP) at Lewisburg, Pennsylvania, and Leavenworth, Kansas. Good then was temporarily returned to Cedar Junction in May, 1990, so that he could assist in preparing the appeal of his murder conviction. It was during this temporary stay at Cedar Junction that Good filed this action, pro se. In June, 1990, prior to the hearing on his request for an injunction to prohibit his return to the custody of the FBOP, Good was returned to the FBOP. He currently is serving his sentence at USP, Marion, Illinois.

1. *Review of his inmate classification.* Good's first claim was that, under the department's regulations, 103 Code Mass. Regs. § 420.00 (1992), and the due process provisions of the Massachusetts Constitution, he is entitled to review of his inmate classification even though he is not in the physical custody of the department. The commissioner argues that Good has no right to such review and, even if he does, he has been afforded the required review. A judge of the Superior Court ruled that only inmates in the physical custody of the department (inmates not serving sentences in out-of-State or Federal facilities) are entitled to review under the department's regulations.[1]

We conclude that the department's own regulations require meaningful and periodic review of Good's classification. Thus, we conclude that it is unnecessary to address the assertion by Good that the due process provisions of the Massa-

---

[1]The judge suggested that the plaintiff should seek Federal review of his Federal classification with Federal officials, using procedures outlined in 28 C.F.R. part 52. Indeed, Federal review is appropriate for the plaintiff's *Federal* classification as long as he is in Federal custody (i.e., while Good is in Federal custody, it is for Federal authorities to determine in which Federal penitentiary Good will be housed). In this case, however, Good is seeking review of his *departmental* classification (i.e., whether Good should remain in Federal custody at all, which, under departmental regulations, is a higher level of security than being held in a correctional facility in the Commonwealth. See 103 Code Mass. Regs. § 420.06 [1992], defining "Higher Security Transfer").

chusetts Constitution require this review.[2] See *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523, 526 (1983), citing *Beeler* v. *Downey*, 387 Mass. 609, 613 (1982).

The department's regulations regarding classification are applicable "to all inmates at state, county and federal correctional institutions who are serving a sentence imposed by the state of Massachusetts." 103 Code Mass. Regs. § 420.04 (1992). There is no dispute that Good is serving a sentence imposed by the Commonwealth. Thus, the classification regulations apply to him. The regulations further provide that "[e]ach inmate's case shall be reviewed at least once every six months subsequent to initial classification." 103 Code Mass. Regs. § 420.09 (1) (1992). The language of the regulations is unambiguous that inmates in the custody of the FBOP are entitled to classification reviews every six months. See *Ladetto* v. *Commissioner of Correction*, 373 Mass. 859, 860 (1977). The department is bound by the mandate of its own regulations, *Royce* v. *Commissioner of Correction*, 390 Mass. 425, 427 (1983), and therefore must review Good's classification in accordance with the procedure described in 103 Code Mass. Regs. § 420.08 (6) (a) - (h) adapted as necessary to accommodate Good's placement in an out-of-State, high-level security facility.

Summary judgment may be granted only when the moving party demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824

<hr>

[2]We acknowledge the assistance given us by the brief of Massachusetts Correctional Legal Services.

At oral argument, plaintiff's counsel suggested that we should offer guidance as to what the Commonwealth's Constitution requires regarding the procedures the department should follow in conducting reviews of Good's status, especially Good's participation in those reviews since he most likely will be unable to appear in person. We note that the regulations are detailed in describing the review procedure and include provisions for notice, an opportunity for the inmate to be heard, and a method for appeal. See 103 Code Mass. Regs. § 420.08 (6) (a) - (h). We are confident that compliance with the department's regulations as suggested by the Appeals Court, *Good, supra* at 76, will protect the plaintiff's procedural rights. Thus, we need go no further at this time.

(1974). *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 808-809 (1991). The commissioner contends that the department has afforded Good meaningful and periodic review of his classification. Good contends that it has not performed these reviews and that, if reviews are being conducted, he is not being notified or given an opportunity to make a presentation. Thus there exists a dispute of material fact whether the department has reviewed and continues to review Good's classification in accordance with its own regulations. The granting of summary judgment was improper and so we reverse the judgment of the trial court. There must be further proceedings on this issue.

2. *Good's claim of violation of art. 26 of the Declaration of Rights.* Good's other claim is that his confinement at USP Marion subjects him to cruel or unusual punishment in violation of art. 26 of the Massachusetts Declaration of Rights. More specifically, Good, who has a history of bladder cancer, claims that the drinking water at Marion contains carcinogenic substances which unreasonably increase the risk that Good will suffer a recurrence of bladder cancer. The commissioner counters that since Good is in Federal custody, any claim arising out of the conditions of confinement at Marion lies against Federal authorities, not against the commissioner. The judge agreed with the commissioner and granted his motion for summary judgment.

In support of his opposition to the commissioner's motion for summary judgment, Good submitted a memorandum, affidavits and other exhibits. Viewed in the light most favorable to Good, these documents tended to show that Good was successfully treated during the 1970's for bladder cancer; that the drinking water supply at Marion contains substances which increase greatly a person's risk of cancer, including bladder cancer; that Good's only source of drinking water is this contaminated water; that Good is more likely to get bladder cancer from consuming the water than someone who does not have a history of bladder cancer; and that, if Good suffers a recurrence of bladder cancer, he is more

likely to die than someone who does not have a history of bladder cancer.[3]

Good is not seeking money damages for an alleged injury caused by his consumption of the water at Marion, nor is he seeking an order to compel the prison officials at Marion to remedy the drinking water contamination problem. Rather, Good's complaint sought an order prohibiting the department from transferring him to Marion where he would be exposed to the contaminated water.

The defendant does not address the merits of Good's claim, but instead asserts that the commissioner is not the proper party defendant since Good has been transferred to the physical custody of the FBOP. This contention is misplaced. The plaintiff is seeking to return to a correctional facility in the Commonwealth; he is not seeking an injunction ordering the FBOP to remedy the drinking water problem. The department maintains jurisdiction over inmates transferred to Federal custody. *Ladetto* v. *Commissioner of Correction*, 373 Mass. 859, 859-860 (1977). See G. L. c. 124, §§ 1 (*f*), (*g*) (1992 ed.); G. L. c. 127, § 97A (1992 ed.).[4] Since the commissioner has the ability to prevent harm to Good, by, for example, transferring him to another facility with safe drinking water, but has failed to do so, Good should have been allowed to maintain his suit against the commissioner. Cf. *Inmates of Suffolk County Jail* v. *Eisenstadt*, 494 F.2d 1196, 1199 (1st Cir. 1974) (commissioner is subject to court order where he has "major statutory responsibilities bearing precisely on the issues raised in the inmates' suit"). The judge erred in granting summary judgment for

---

[3]In his memorandum and accompanying documents in support of his motion, the commissioner did not address the alleged water problem at Marion or Good's medical condition.

[4]Thus, the commissioner has the authority to return Good to the Commonwealth or to transfer him to another State if the circumstances so require. The record in this case proves this point: in May, 1990, the department temporarily transferred Good back to Massachusetts from USP, Leavenworth, so that Good could assist in the appeal from his murder conviction.

the commissioner on the ground that the commissioner was not a proper party defendant.

The judge did not address the merits of Good's art. 26 claim in granting the commissioner's motion for summary judgment. We take this opportunity to offer guidance on the validity of that claim because the issue is likely to arise on remand.

Article 26 of the Declaration of Rights prohibits the infliction of cruel or unusual punishments. This court has read art. 26 to be at least as broad as the Eighth Amendment to the Federal Constitution. *Michaud* v. *Sheriff of Essex County*, 390 Mass. 523, 534 (1983). Article 26 bars punishments which are found to be cruel or unusual in light of contemporary standards of decency which mark the progress of society. *Id.* at 533. *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 435 (1982). In divining contemporary standards of decency, we may look to State statutes and regulations, which reflect the public attitude as to what those standards are. *Michaud, supra* at 527, 529-530.[5]

In establishing the Executive Office of Environmental Affairs, the Legislature noted that "providing safe water to drink and clean air to breathe is a basic mandate." G. L. c. 21A, § 2 (2), inserted by St. 1974, c. 806. To fulfil this mandate, the Department of Environmental Protection has promulgated detailed regulations setting minimum quality standards for drinking water. See 310 Code Mass. Regs. § 22.00 (1992). Recognizing that prison inmates are entitled to safe drinking water, the Department of Public Health requires that correctional facilities in the Commonwealth must provide at all times safe and sanitary drinking water. 105 Code Mass. Regs. § 451.125 (1992).

---

[5]In *Michaud*, we noted that Department of Public Health regulations regarding conditions at correctional facilities may be used "as an objective standard for assessing whether sanitary conditions at the jail fall below minimum standards of decency," although a violation of the regulations is not per se a violation of art. 26. *Michaud, supra* at 530-531. The Department of Public Health regulations have the force of law. *Id.*

Although we do not rule that these provisions are constitutionally required, we do conclude that they reflect the public attitude that contemporary society's standards of decency include the availability of safe drinking water. This standard applies to all citizens of the Commonwealth, including inmates under the control of the department. Consumption of contaminated water poses a health risk to which not even prison inmates should be subject. Cf. *Helling* v. *McKinney*, 113 S. Ct. 2475, 2480 (1993).

Thus, if Good has no option, as a result of his confinement at Marion, but to drink water which poses a substantial risk of serious harm to his health and the department has knowledge of the situation and ignores it, then these circumstances arguably would violate Good's rights under art. 26. See *Miga* v. *Holyoke*, 398 Mass. 343, 349-350 (1986); *Baptiste* v. *Sheriff of Bristol County*, 35 Mass. App. Ct. 119, 122 (1993). See also *Helling, supra* at 2480-2481, citing *Youngberg* v. *Romeo*, 457 U.S. 307, 315-316 (1982); *Jackson* v. *Arizona*, 885 F.2d 639, 641 (9th Cir. 1989).[6] An inmate need not wait until he suffers actual harm before he can assert a cause of action under art. 26. See *Libby, supra* at 434. Rather, a claim is made out if there is a substantial risk that the inmate will suffer serious harm as a result of the conditions of his confinement. See *Helling, supra* at 2480.

If, on remand, Good satisfies the judge that his art. 26 rights have been, and continue to be, violated,[7] the trial

---

[6] We recognize that the department probably is powerless to remedy the drinking water problem at USP, Marion. If, however, the water truly poses a substantial risk of serious harm to Good and if the department is aware of this risk but allows Good to remain in Federal custody even though it has the ability to transfer him back to the Commonwealth, then it is arguable the department violates art. 26 just as it would if Good were housed at Cedar Junction and exposed to contaminated water there.

[7] Where appropriate, summary judgment can be granted against the moving party. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *Thattil* v. *Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc.*, 415 Mass. 381, 385 (1993). The plaintiff asserts that, at this stage, this court should grant summary judgment against the commissioner and issue an injunction. We do not agree. There remain issues of fact regarding, for example, the substantiality of the risk of harm to Good, the seri-

judge will be faced with the task of fashioning an appropriate remedy. Good suggests that the remedy should be an injunction ordering the commissioner to return Good to the Commonwealth. Based on the record before us, however, we cannot say that such an injunction would be the most appropriate remedy.[8]

The commissioner has broad discretion to transfer inmates from one facility to another facility operated by the department, or to a facility operated by another State or the Federal government. See *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 397 (1983); *Jackson* v. *Commissioner of Correction*, 388 Mass. 700, 703 (1983). On the other hand, the judiciary will not stay its hand should the commissioner fail to meet his obligations under the Constitution of the Commonwealth. *Michaud, supra* at 534.

The order of the trial judge granting summary judgment in favor of the defendant is vacated and the judgment is reversed. The case is remanded to the trial court for further proceedings in accordance with this opinion.

*So ordered.*

ABRAMS, J. (concurring, with whom NOLAN, J., joins). I agree that the plaintiff is entitled to review of his classification under the department's regulations. The plaintiff argues status as if it were a constitutional attack on the use of trans-

ousness of that harm, and the commissioner's awareness of the risk of harm. The commissioner has conceded none of these issues. Furthermore, both parties should have the opportunity to present arguments regarding an appropriate remedy.

[8]Ordering Good's return might be the only possible remedy, but that is not apparent from the record before us. On remand, the judge should weigh all possible remedies in arriving at the most appropriate remedy, in light of our case law regarding the granting of equitable relief. E.g., *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 616-617 (1980) (discussing standard for preliminary injunction); *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 729-730 (1980) (noting special considerations when public officials are enjoined); *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983) (risk of harm to public interest may be considered in appropriate cases).

fers.[1] The only issue being remanded is status, not the constitutionality of the transfer statute.

I also write separately on the issue of water standards. The court's opinion assumes that Massachusetts water standards differ from Federal standards with respect to the alleged contaminants and that the Massachusetts standards are higher. There is no basis for such an assumption on this record. The plaintiff makes no such allegation. Indeed, the complaint does not allege any violation of either Federal or Massachusetts water standards. The exhibits attached to the plaintiff's opposition to the commissioner's motion to dismiss or for summary judgment focus on whether the water at USP, Marion, violates Federal standards. Because the question whether the water at USP, Marion, meets Federal standards is being litigated in Illinois, see *Wyler* v. *Environmental Protection Agency, et al.*, U.S. Dist. Ct. for So. Dist., Ill., No.    (1994), I would expressly limit the remand hearing to the question whether Massachusetts water standards differ from Federal water standards with respect to the alleged contaminants. If the standards are essentially the same, then the Superior Court judge should await the outcome of the litigation in Illinois.[2] Illinois is the appropriate venue for the

---

[1]The plaintiff argues a due process interest in being incarcerated "in the Massachusetts prison system . . . [with] the comfort of contact with persons who have had similar life experiences, who grew up in the same neighborhoods as he did and who have similar backgrounds." He also argues that "a part of his daily life in Massachusetts would include the Red Sox (for better or worse), Celtics, Patriots and Bruins, not as in Illinois, the White Sox, Cubs, Bulls, Bears, and Blackhawks as sources of daily conversation. The exploits of Governor Weld, Senate President Bulger, his brother Whitey and the Massachusetts Lottery all contribute to the local prison discourse. Chowder and boiled dinners form the prison fare; not grits and okra. Each item forms one of the threads of daily existence that is woven by the inmates into the fabric of their prison life. Even within prisons, geographic regions maintain a distinct cultural identity . . . . [The p]laintiff has a natural liberty interest in being imprisoned within a familiar culture."

[2]Additionally, such an approach would mean that taxpayers would not have to fund the adjudication of the same issue (i.e., whether the water at USP, Marion, meets Federal standards) in two States.

determination whether the water at USP, Marion, meets Federal standards.

Last, I would follow the test annunciated in *Helling* v. *McKinney*, 113 S. Ct. 2475 (1993).[3] In *Helling, supra* at 2481, the United States Supreme Court held that "[a prisoner] could state a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to levels of [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." The Supreme Court then remanded the case "to the District Court to provide an opportunity for [the prisoner] to prove his allegations, which will require him to prove both the subjective [deliberate indifference] and the objective [unreasonable risk of serious damage to his future health] elements necessary to prove an Eighth Amendment violation. The District Court will have the usual authority to control the order of proof, and if there is a failure of proof on the first element that it chooses to consider, it would not be an abuse of discretion to give judgment for [the prison officials] without taking further evidence." *Id.* at 2481-2482. The Supreme Court went on to note that, "with respect to the objective factor, determining whether [the prisoner's] conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [environmental tobacco smoke]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." (Emphasis in original.) *Id.* at 2482. If it is determined that the Massachusetts water standards are essentially the same as the Federal standards with respect to the alleged contaminants and that the water at USP, Marion, satisfies the Fed-

---

[3]The court appears to restate the *Helling* standard in its own words.

eral standards, then summary judgment should enter for the commissioner because such a determination would establish that the risk of which the plaintiff complains is one that "today's society chooses to tolerate."