ANTHONY JACKSON vs. COMMISSIONER OF CORRECTION
& others.[1]

No. 94-P-1163.

Suffolk. May 9, 1995. - December 28, 1995.

Present: KASS, JACOBS, & IRELAND, JJ.

*Imprisonment*, Safe environment. *Constitutional Law*, Imprisonment, Cruel and unusual punishment.

A Superior Court judge incorrectly entered summary judgment in favor of the Commissioner of Correction on a prisoner's claim that the commissioner subjected him to cruel and unusual punishment by forcing him to share a cell with an inmate who smoked cigarettes. [568-569]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1992.

The case was heard by *Patrick J. King*, J., on a motion for summary judgment.

*Anthony Jackson*, pro se.

*Philip W. Silva* for the Commissioner of Correction.

JACOBS, J. The plaintiff is an inmate in the Massachusetts prison system serving a life sentence without the possibility of parole.[2] He filed a pro se complaint in the Superior Court in 1992, alleging that he is a nonsmoker who has suffered two heart attacks and has coronary and respiratory problems

---

[1]In addition to the commissioner, Larry E. DuBois, and the Department of Correction, the defendant also filed this 42 U.S.C. § 1983 (1988) action against several officials of the department, individually: Nancy A. White, associate commissioner and general counsel; Paul Rakiey, superintendent, North Central Correctional Institution at Gardner (NCCI); Edward Foley, deputy superintendent, NCCI; Stan Suchocki, unit manager, NCCI.

[2]The plaintiff's several convictions of murder in the first degree were affirmed in *Commonwealth* v. *Jackson*, 384 Mass. 572 (1981); *Commonwealth* v. *Jackson*, 388 Mass. 98 (1983); *Commonwealth* v. *Jackson*, 391 Mass. 749 (1984).

and that prison officials subjected him to constitutionally pro-
scribed cruel and unusual punishment by forcing him to
share a cell with an inmate who smoked cigarettes. A judge
of that court ordered summary judgment for the defendants.
On appeal, the plaintiff argues that the material facts in dis-
pute entitle him to pursue his claim that the defendants have
been deliberately indifferent to his medical condition, result-
ing in his detrimental exposure to environmental tobacco
smoke (ETS). Among several claims of physical injury he
states that his "heart condition has been aggravated by the
smoke from his cellmate's cigarettes." He asserts that he
"fears for his life and is experiencing mental, emotional and
psychological depression." In addition to claims under art. 26
of the Massachusetts Declaration of Rights and the Eighth
Amendment to the United States Constitution, the plaintiff
seeks declaratory and injunctive relief and actual, compensa-
tory, and punitive damages and attorney's fees and costs.

In his verified complaint, the plaintiff alleges that the de-
fendants do not enforce an existing smoking policy, and de-
scribes his several complaints to prison officials concerning
cellmates who smoked. He particularly complains of a cur-
rent cellmate whose smoking he describes as "constant and
excessive," and who was transferred to his cell at North Cen-
tral Correctional Institution at Gardner (NCCI) on March
3, 1992. He states that on three occasions he wrote to or told
prison officials that he "was being forced to share a cell with
an inmate who smoked, and that the smoke was causing cor-
onary and respiratory problems." Receipt of each of these
complaints was acknowledged by the defendants in answers
to interrogatories.

In seeking summary judgment, the defendants assert that
they responded by having the unit manager monitor the
cellmate and removing him after he was observed violating
his agreement not to smoke in the cell. They also claim that,
in addition to having a smoking policy,[3] "staff at NCCI-
Gardner attempt to accommodate non-smokers who request

---

[3]By its terms, the smoking policy established at NCCI on November 1,
1987, "is applicable to all work areas and public areas."

to be housed with another non-smoker whenever possible." In opposition, the plaintiff states in an affidavit that "[o]n March 11, 1992, after being examined [by a prison physician], [the physician] called [the deputy superintendent of NCCI] and explained that due to [the plaintiff's] medical condition, [the physician] did not want [him] housed with an inmate who smokes. After [the physician] got off the telephone, he told me that [the deputy superintendent] said; 'The matter was being taken care of.' " Moreover, the plaintiff's submissions establish that notwithstanding the physician's call to the deputy superintendent, the smoking inmate was not transferred until May 14, 1992, some sixty-four days after the physician's call.[4] He also cites five instances, including one subsequent to May 14, 1992, where he was required to share cells with inmates who smoked, cumulatively exposing him to ETS for more than six months. The judge determined, as matter of law, that the defendants' failure to remove the cellmate for sixty-four days following the physician's call did not constitute deliberate indifference to the plaintiff's medical condition. We disagree with that conclusion.

"[A] cause of action under the Eighth Amendment [is stated] by alleging that [prison officials] have, with deliberate indifference, exposed [a plaintiff] to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling* v. *McKinney*, 509 U.S. 25, 35 (1993). The Supreme Judicial Court "has read art. 26 to be at least as broad as the Eighth Amendment." *Good* v. *Commissioner of Correction*, 417 Mass. 329, 335 (1994). "An inmate need not wait until he suffers actual harm before he can assert a cause of action under art. 26 . . . . Rather, a claim is made out if there is a substantial risk that the inmate will suffer serious harm as a result of the conditions of his confinement." *Id.* at

---

[4]To the extent that the defendants assert, on appeal, objectionable hearsay in the plaintiff's reference to the physician's telephone call, we note that no motion to strike any portion of the plaintiff's affidavit was filed. Accordingly, the motion judge's apparent adoption of the statement was within his discretion. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 n.12 (1976).

336. "An inmate must rely on prison authorities to treat his medical needs . . . ." *Estelle* v. *Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Id.* at 104. See also *Sires* v. *Berman*, 834 F.2d 9, 12 (1st Cir. 1987).

The statement to the deputy superintendent attributed to the prison physician in this case is colorably an "order" or "express instructions of a prisoner's doctor[ ]." See *Gill* v. *Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). That statement takes on further significance when read with the physician's report that the deputy superintendent told him "[t]he matter was being taken care of." Cf. *Layne* v. *Vinzant*, 657 F.2d 468, 471 & n.3 (1st Cir. 1981) (where there is actual notice of facts sufficient to put a prison official on inquiry of a prisoner's need for medical care, administrative negligence can rise to the level of deliberate indifference). Taken together with the plaintiff's direct complaints, such notice to the defendants raises material issues of fact concerning their reaction. The plaintiff's undisputed assertion of his repetitive confinement with cellmates who smoke supports his further contention that the defendants "will again transfer [him] into a cell with an inmate who smokes." This issue is not resolved by the response of the defendants that one cellmate who smoked was transferred or by their vague indication of their attempts to accommodate nonsmokers. The defendants do not dispute either the substance of the plaintiff's notice to them or the seriousness of his medical needs. The plaintiff has demonstrated that genuine issues of material fact remain concerning not only the defendants' past conduct but also their "current attitudes and conduct" in relation to their administration of the smoking policy, and whether that conduct constitutes "deliberate indifference." See *Helling* v. *McKinney*, *supra* at 36. Accordingly, summary judgment is not appropriate, and the plaintiff is entitled to pursue his claim. See *Good* v. *Commissioner of Correction*, *supra* at 336 & n.7.

The order of the Superior Court judge granting summary judgment for the defendants is vacated, and the judgment is reversed.

*So ordered.*