Garsh, E. Susan, J.
The defendant, Tanya Singleton, stands before this court for sentencing after pleading guilty to criminal contempt. The criminal contempt arises out of Ms. Singleton’s refusal, after receiving a grant of immunity, to testify before a grand juiy investigating the death of Odin Lloyd. There is no task facing a judge that is more important and more difficult than the fashioning of an appropriate sentence.
I have assessed all the information made available to me, including certain medical records of Ms. Singleton and a letter from Dr. Susan Tannenbaum, a medical oncologist at the University of Connecticut Health Center. I have listened to the sentencing recommendations made by the Commonwealth and by Ms. Singleton and have read the Commonwealth’s and the defendant’s sentencing memoranda.
In preparing for this sentencing decision, I also have considered the Commonwealth’s nonbinding sentencing guidelines that were established by a Sentencing Commission created by our Legislature, which consists of judges, prosecutors, defense attorneys, and representatives from the criminal justice community and the Victim Assistance Board. These guidelines take into account a defendant’s criminal histoiy as well as the nature of the crime for which she has been convicted. The guideline sentence for the crime of common-law criminal contempt committed by someone like Ms. Singleton, who has no prior record, ranges from unsupervised probation to incarceration for a maximum of twelve months.
The maximum sentence permitted by law is a sentence of commitment to jail[1] for two and one-half years.[2]
This court must exercise its best judgment as to the appropriate sentence to be imposed. Judicial discretion requires the Court to carefully examine and assess the facts and circumstances of this particular case. In determining how to exercise its discretion, the Court is guided by all the relevant goals of sentencing — punishment, deterrence, and rehabilitation.[3]
Turning to the first prong, the defendant’s deliberate flouting of the court’s clear and unequivocal command to testify before a grand juiy warrants the infliction of punishment. Her refusal to testify is an affront to the public’s right to eveiy person’s evidence except to the limited extent provided by constitution, statute, Supreme Judicial Court rules, or common law. Ms. Singleton’s wilful conduct constituted an assault upon the rule of law and effective administration of criminal justice. It obstructed the ability of the grand jury to effectively investigate a murder and had the potential to impair the Commonwealth’s ability to secure one or more indictments. The defendant’s assertion that she loves her cousin Aaron Hernandez “as if he were her own son” warrants no reduction in punishment. Even a genuine mother of an emancipated son is not entitled to suppress evidence by *212 refusing to testify before a grand jury investigating her own son.[4] Indeed, so important is the grand jury’s interest in having access to all relevant evidence that the privilege not to testify against a spouse does not apply to testimony before a grand jury.[5]
The condition of the defendant’s health is relevant to what form of punishment is most appropriate.[6] Ms. Singleton was diagnosed with breast cancer in July of 2011. Following surgery, she received chemotherapy and radiation. In December of 2012, scans revealed new metastatic disease. After treatment, scans in March of 2013 showed that she was in remission, leading to the discontinuation of some, but not all, therapy. There was a break in therapy when the defendant was incarcerated for civil contempt on August 1, 2013. The defendant subsequently was indicted for criminal contempt and held on bail conditions until released on January 30, 2014. Because of her deteriorating medical condition, on February 12, 2014, the Court allowed, without objection, the defendant’s motion to modify bail conditions in order to permit Ms. Singleton to return to Connecticut where she could be treated by Dr. Tannenbaum.
Dr. Tannenbaum, who is board-certified in hematology and oncology, has been taking care of the defendant since her diagnosis. She is an Associate Professor of Medicine, Medical Director of the Clinical and Translational Breast Program and Program Director of the Hematology Oncology Fellowship Program at the University of Connecticut Health Center. It is Dr. Tannenbaum’s opinion that the break in therapy that occurred when Ms. Singleton was incarcerated led to premature disease recurrence and resulted in the loss of potential to continue on the medications she had been on.[7] The defendant developed severe thrombocytopenia requiring a platelet transfusion, and she developed severe neuropathy. After this Court permitted the defendant to return to Connecticut, she was admitted to the hospital for pain control management and maintained on a therapeutic cancer treatment drug. In April of this year, Ms. Singleton’s PET-CT scan showed recurrent metastatic disease with abnormalities in her liver and an upper abdominal lymph node. Her treatment was adjusted.
Dr. Tannenbaum has advised the Court that Ms. Singleton’s treatment is very complicated, that the management of her therapy is complex, that she may need to change regimens again due to what appears to be progressive disease, and that she will be maintained on a variety of treatments to control her metastatic disease for which there is no cure. She further has opined that significant interruptions would definitely impact negatively on her quality of life and likely on her longevity, that her treatments can be difficult and that consistency and regularity are very important.
The Court ordered that, if the Commonwealth intended to request that the Court sentence the defendant to a term of incarceration, the Commonwealth should present at this sentencing hearing the testimony of the jail’s health administrator or other appropriate medical personnel as to whether the jail is able to provide the defendant with adequate medical treatment for her condition and whether incarceration at the jail would unduly imperil the defendant’s physical health or shorten her life. In response, the Commonwealth advised the Court, in its Sentencing Memorandum, that “the Commonwealth could not currently ensure that the defendant’s ongoing treatment plan would be accomplished if she was incarcerated.” Today, the Commonwealth has represented that the medical staff at the jail cannot accommodate her needs going forward. The defendant’s metastasized cancer is a serious, life-threatening condition that has a substantial present effect on her ability to function. The Commonwealth presented no evidence that the jail would be able to attend to Ms. Singleton’s complex medical needs, and the Commonwealth is not recommending any term of incarceration. Imprisonment of the defendant in her present condition would exacerbate her medical condition and require her to endure far more than the normal hardship attendant with any incarceration.
Except for the defendant’s extraordinary physical impairment, which cannot be adequately addressed in jail, the Court would sentence Ms. Singleton to a meaningful term of incarceration. Probation with home confinement achieves the Court’s aim to punish the defendant for her offense in a fashion that is both proportionate to the offense and to her individual situation. It provides adequate punishment for the offense but does not have the unintended or unwarranted consequence of endangering Ms. Singleton’s life or health.
General deterrence is also a sentencing goal recognized in this Commonwealth in order to discourage others from being tempted to engage in similar conduct in the future.[8] Were the public to believe that refusing to give evidence that might incriminate a close relative or personal friend after being ordered to do so is an offense that is not dealt with seriously by the courts, others might be emboldened to flaunt court orders. The rationale for not sentencing Ms. Singleton to a committed jail sentence has been set forth in the public hearing and also is contained in this sentencing statement filed in the public court records for anyone to read. The Court has every reason to believe that the public will be fully informed and will understand that Ms. Singleton’s health is the only reason she is not being placed in jail.
Finally, the sentence to be imposed is designed to be rehabilitative. A standard general condition of probation with which Ms. Singleton will be obligated to comply is that the defendant “shall obey all local, state and federal laws and all Court orders.” Should the defendant again, if ordered, refuse to testify, she would *213 be in violation of her terms of probation. Home confinement will give the defendant plenty of time to think about the quality of her life. Hopefully, the sentence to be imposed may induce the defendant not to again put her familial and social relationships above society’s need for probative evidence. The Court does not believe that the parties’ sentencing recommendations sufficiently satisfy the rehabilitative goal of sentencing.
The defendant’s suggested sentence of one year with credit for time served and the balance suspended for one year, with home confinement during that period, does not contain a sufficient inducement to the defendant to alter her behavior. Both the defendant’s medical situation and the jail’s ability to attend to her medical needs may change. In the future, the Commonwealth might be able to demonstrate that the jail would be able to provide decent, timely medical care. Should the defendant’s recommended sentence be imposed and should Ms. Singleton later be found in violation and her probation be revoked, the Court would be unable to impose a sentence of greater than one year,[9] and she would get credit for the 161 days she already served.[10] Such a sentence provides insufficient inducement to Ms. Singleton to change her ways. Facing the prospect of two and a half years in jail is more likely to be rehabilitative.
The Commonwealth’s recommended sentence of two years of probation with home confinement during that entire period of time does maintain the court’s ability to sentence the defendant to a lengthy term of incarceration in the event she violates her probationary terms, but it contains an insufficient incentive for her to rehabilitate herself such that she becomes a law-abiding citizen. Given her terminal medical condition, the defendant reasonably may believe that, as a practical matter, she is not likely to be sentenced to incarceration for a future violation.[11] In light of her shortened life expectancy, probation with two years of home confinement appears to provide insufficient incentive to reform. In contrast, a shorter period of home confinement may provide some light for Ms. Singleton at the end of the tunnel; in the event of a future court order, the defendant may be within months of release from the substantial strictures of home confinement with time left to enj oy her family and the world at large. At that point, the knowledge that, if she violates a court order to testify, the court may find her in violation of the terms and conditions of her probation and may extend the period of home confinement for an additional year or more may motivate her to obey the order.[12]
After consideration of all the relevant factors, and in the exercise of my best judgment, I conclude that Ms. Singleton should be sentenced to probation for a period of two years. In addition to the general conditions of probation, which will include obeying all local, state and federal laws and all Court orders, special conditions of probation are to include the following:[13]
The defendant must submit to GPS (Global Positioning System) monitoring during her probationary period and, except in a life-threatening emergency or with the prior permission of the probation officer, may not remove or tamper with her GPS device; the defendant must notify her probation officer immediately if there is a need to remove the GPS device because of an emergency medical necessity and must arrange for the device to be reattached as soon as possible after its removal; the defendant must fax a letter of medical necessity from a physician to probation prior to any removal of the GPS device; the defendant shall pay all fees and costs related to GPS monitoring; the defendant must keep the GPS device charged;
The defendant must remain confined at all times, for the first twelve months, in her present residence at 114 Lake Avenue, Bristol, Connecticut, with the right to leave her residence only for medical appointments, hospitalization, court appearances, meetings with her attorney, and appointments with her probation officer; all of which must, other than in the case of emergency medical treatment, be preapproved in advance by the probation department; the defendant must return promptly to her residence after any authorized departure; in the event of a medical emergency, if unable to reach her probation officer for permission, the defendant must call her probation officer as soon as possible and provide proof of the emergency as requested by the officer, travel is restricted to Connecticut, Massachusetts and Rhode Island and the defendant may enter Rhode Island only for purposes of authorized travel between Massachusetts and Connecticut;
The defendant must provide the names, phone and cell phone numbers to probation of the persons closely monitoring her, including her father and sister;
The defendant must have no contact, direct or indirect, with any Aaron Hernandez, Carlos Ortiz, Shayanna Jenkins and Ernest Wallace and any witness or potential witness on a list to be provided by the District Attorney to Probation except for her sister Jennifer Mercado, her father, Penny Dudley and Julie Dionne;
The defendant must report in person weekly to the probation department unless excused by the probation officer on a specific date, as a result of the defendant’s medical condition;
The defendant must execute a waiver of extradition; and
The defendant must sign any and all releases or authorizations required by the Probation Officer.

The Court rejects the Commonwealth’s position that the *214 defendant could be sentenced to a sentence of not more than two and one-half years incarceration in the House of Correction. In support of its position, the Commonwealth cites Mass.R.Crim.P. 44, which governs non-summary criminal contempt, and the Reporter’s Notes to that rule. Those Notes, however, state that G.L.c. 220, §14, as interpreted by the Supreme Judicial Court, prohibits contempt commitments other than to the “common jail.” A jail may house both pre-trial detainees and those sentenced upon conviction of a crime. McNeill v. Commissioner of Correction, 417 Mass. 818, 822 (1994). G.L.c. 220, §14 provides in relevant part that “[c]ommitments for contempt of court may be made to any jail in the commonwealth ...” This statute, like its predecessor, precludes a sentence to the house of correction for contempt. See In re Kelly, 292 Mass. 198, 199 (1935) (sentence for criminal contempt lawfully may be made only to a jail and a sentence to a house of correction is invalid); Hurley v. Commonwealth, 188 Mass. 443, 448 (1905) (statute specifying jail for contempt sentences is exclusive of any other general provisions and, thus, statutory authority to sentence to imprisonment in the house of correction when one is convicted of a crime punishable wholly or in part by imprisonment in the jail, does not apply to a case of criminal contempt of court).

The maximum term of imprisonment in a jail or house of correction is two and one-half years. G.L.c. 279, §23. The defendant’s argument that G.L.c. 233, §20H reduces the maximum sentence that had been available at common law for contempt is not persuasive. That statute provides that a person who refuses to testify after being granted immunity and being ordered to testify shall be incarcerated “for a term not to exceed one year or until [s]he complies with the order of the court, whichever occurs first.” G.L.c. 233, §20H. A term of incarceration under that statute is civil, not criminal, because it is coercive and not punitive. The witness holds the key to the prison cell and may terminate her incarceration by testifying. Commonwealth v. Steinberg, 404 Mass. 602, 608 (1989) (rejecting the witness’s challenge to the trial judge’s decision to hold the witness in contempt under both the statute and Mass.R.Crim.P. 43, which governs summary criminal contempt); Commonwealth v. Raczkowski, 19 Mass.App.Ct. 991, 992 (1985). Accordingly, the one-year maximum set forth in §20H does not apply.

Protection of the public is not a relevant factor in this case. There is no reason to believe that Ms. Singleton poses any threat to others.

Cf. In re Grand Jury Subpoena, 430 Mass. 590, 599 (2000) (declining to create a privilege for parents of juveniles).

G.L.c. 233, §20, Second provides that, other than in certain specified situations, a spouse shall not be compelled to testify “in the trial of an indictment, complaint, or other criminal proceeding” brought against the other. See In re Grand Jury Proceeding, 447 Mass. 88, 91-98 (2006) (spousal statutory privilege not to testify does not apply to grand jury proceedings).

Under the federal sentencing guidelines, for example, "[a]n extraordinary physical impairment may be a reason to depart downward . . .” 18 USCS Appx., USSG §5H1.4 (2014). See United States v. Martin, 363 F.3d 25 (1st Cir. 2004) (upholding the sentencing of a defendant with immune suppressive disorder to three years of probation with six months to be served in home detention); United States v. Pineyro, 372 F.Sup.2d 133, 138 (D.Mass. 2005) (felon in possession of firearm sentenced to time served where he had serious medical condition needing careful monitoring that would be made worse by incarceration and Federal Bureau of Prisons had not met its burden of showing it could provide the defendant with necessary, effective medical care); United States v. Willis, 322 F.Sup.2d 76, 84 (D.Mass. 2004) (defendant sentenced to probation, six months of which was to be served in home detention with electronic monitoring, given his potentially serious medical conditions likely to be exacerbated by incarceration); In re Special Proceedings, No. 01-47 (D.R.I. Dec. 9, 2004) (reporter convicted of criminal contempt for refusing to disclose confidential source of leak of grand jury evidence, which threatened to compromise an ongoing grand jury investigation, sentenced to six months home confinement because of medical condition requiring strict medication regimen to control his immune system because, although court was reasonably confident that the Bureau of Prisons could provide appropriate care, it was not sure enough that it wanted to subject defendant to the risk that his health or life might be jeopardized by imprisoning him).

To fashion an appropriate sentence this Court need not decide whether the break in treatment occurred because of the defendant’s delay in transferring treatment records to the place of her detention, as the Commonwealth asserts in its Sentencing Memorandum, or whether it is attributable to any failure on the part of the correctional authorities to attend to the defendant’s medical needs.

See Commonwealth v. Bland, 48 Mass.App.Ct. 666, 669 (2000).

When probation is revoked, the original suspended sentence must be imposed if the time has expired within which the sentence may be revised or revoked. Commonwealth v. Holmgren, 421 Mass. 224, 228 (1995). The judge hearing the probation violation does not have the power to impose a sentence with a longer period of incarceration. See generally Commonwealth v. Bruzzese, 437 Mass. 606, 609-10, 613-14 (2002).

The defendant was arraigned on this indictment on August 23, 2013. On January 30, 2014, she satisfied the order of bail and was released from pre-trial custody. The defendant’s position that she is entitled to 196 days of credit is based on the mistaken assumption that she is entitled to credit for any time during which she was being held solely on a civil contempt order. G.L.c. 127, §129B provides, in relevant part, that “(t]he sentence of any prisoner in any correctional institution of the commonwealth or in any house of correction or jail, who was held in custody awaiting trial shall be reduced by the number of days spent by him in confinement prior to such sentence and while awaiting trial. . .” G.L.c. 279, §33A provides that “[t]he court on imposing a sentence of commitment to a correctional institution of the commonwealth, a house of correction, or a jail, shall order that the prisoner be deemed to have served a portion of said sentence, such portion to be the number of days spent by the prisoner in confinement prior to such sentence awaiting and during trial.” When the defendant was incarcerated only for the purpose of coercing compliance with a court order, she was not held in custody or in confinement “awaiting trial” within the meaning of these statutes and, therefore she is not entitled to credit for such time against any sentence that may be imposed should probation be revoked.

The Eighth Amendment and Art. 26 of the Massachusetts Declaration of Rights impose a duty to attend to a prisoner’s serious medical needs. Gaudrealt v. Salem 923 F.2d 203, 208 (1st Cir. 1990), cert. den., 500 U.S. 956 (1991); Torres v. Commission of Correction 427 Mass. 611, 613-14, cert. den., 525 U.S. 1017 (1998); Jackson v. Commissioner of Correction 39 Mass.App.Ct. 566, 668-69 (1995). See Good v. Commissioner of Correction 417 Mass. 329, 336 (1994) (art. 26 implicated by allegation that prisoner, who previously had bladder cancer, was at increased risk for recurrence of cancer with elevated risk of death from prison drinking water that contained carcinogenic substances); State v. Kraft, 326 N.W.2d 840, 842 (Minn. 1982) (sentencing to jail defendant in remission with acute promyelocytic leukemia is not cruel and unusual punishment but it might violate the Eighth Amendment to sentence a person with the defendant’s position to jail if the court knew that defendant would thereby be deprived of adequate medical treatment).

When a defendant violates a condition of his probation, a judge’s authority to modify or add conditions of probation is nearly unlimited should the judge decide not to imprison the defendant but to return her to probation. A judge may impose any conditions of probation that could have been imposed at her original sentencing. Commonwealth v. Goodwin, 458 Mass. 11 (2010). See G.L.c. 279, §3.

The Court declines to adopt the Commonwealth’s suggestion that the defendant be required to abstain from the use of all drugs and alcohol. Use of illegal drugs is already prohibited by the general ■ conditions of probation, which requires the probationer to obey all laws. A condition of probation that infringes on constitutional rights must be reasonably related to legitimate probationary goals. Commonwealth v. Gomes, 73 Mass.App.Ct. 857, 859 (2009) (improper to impose condition of random drug and alcohol testing where there was no evidence that defendant had history of drug or alcohol use and his offenses did not involve drugs or alcohol). Cf. Commonwealth v. Marlow, 2014 Mass.App. Unpub. LEXIS 806 at *7-8 (Rule 1:28) (upholding condition that defendant not enter any establishment where alcohol is served unless accompanied by older relative where defendant’s offense of aggravated assault and battery involved bar altercation in which alcohol played a role).