FILED
United States Court of Appeals
Tenth Circuit

September 27, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

KENT G. SAVAGE,

     Plaintiff - Appellant,

v.

MARY FALLIN, individually and in her official capacity as Governor of the State of Oklahoma; ROBERT PATTON, individually and in his official capacity as Director, Oklahoma Department of Corrections; JASON BRYANT, individually and in his official capacity as Warden, James Crabtree Correctional Center; TERRY CLINE, individually and in his official capacity as Commissioner of Health Department, State of Oklahoma; ROBERT DOKE, individually and in his official capacity as State Fire Marshall, State of Oklahoma; JEFFREY HICKMAN, individually and in his official capacity as Speaker of the House, State of Oklahoma; BRIAN BINGMAN, individually and in his official capacity as Senate President Pro Tem, State of Oklahoma; CLARK JOLLEY, individually and in his official capacity as Chairman of the Senate Appropriations Committee, State of Oklahoma,

     Defendants - Appellees.

No. 16-6083
(D.C. No. 5:15-CV-01194-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

Before **LUCERO**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

Kent Savage appeals the district court's dismissal of his 42 U.S.C. § 1983 claims on various grounds. Although we agree with the bulk of the district court's order, we conclude that Savage's claims against two defendants alleging unsafe prison conditions were prematurely dismissed and that the Governor is not entitled to legislative immunity with respect to her alleged administrative failures. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## I

Savage is an inmate at the medium-security James Crabtree Correctional Center ("JCCC") in Oklahoma. In his complaint, he claims that the defendants have acted with deliberate indifference toward serious danger resulting from prison overcrowding and understaffing. In particular, he alleges that only one correctional officer is generally on duty to monitor 230 inmates housed in the open dorms in his unit, and that only one officer—and sometimes no officer—is present during meals at the dining hall with over 250 inmates. Savage claims that open dormitory housing is especially dangerous because it cannot be effectively "locked down." He claims that

ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

previous open spaces in his unit have been converted into bunk housing, leaving "virtually no unencumbered space." And he alleges that staffing shortages render the prison unable to discipline inmates for infractions.

Savage states that these conditions have led to endemic prisoner-on-prisoner violence. He has been threatened with beating and robbery. Savage has witnessed frequent inmate-on-inmate assaults in the dining hall and in open dorm housing. He also recounts an inmate homicide at JCCC, an incident in which an inmate's throat was cut by a box cutter, and a large brawl involving 70 inmates. Because of understaffing, inmates who "fear for their life" are denied protective custody. Savage argues that the conditions place prisoners' safety at substantial risk. He states that he "does not want to be the tragedy" that will prompt change but that it is "only a matter of time" before major incidents of violence occur. He claims that the conditions of his confinement cause him to suffer sleep deprivation, nightmares, anxiety, depression, severe headaches, and stomach problems.

In addition to safety concerns, Savage alleges that overcrowding and understaffing have resulted in inadequate sanitation facilities, cancelled programs, delayed mail and laundry services, insufficient clothing provisions, rodent infestation in the food service area, basic maintenance failures, long lines to access the Health Services Department,[1] and law library closures. Savage alleges that these issues are not isolated to JCCC. He claims that Oklahoma's prison system in general is

---

[1] Savage filed a separate case in the district court alleging inadequate medical care, which is not at issue in this appeal.

operating at an average of 118 percent of capacity, although it is staffed at 67 percent of the authorized level.

Savage filed this suit, claiming violations of the Eighth Amendment and intentional infliction of emotional distress against the Governor of Oklahoma (Mary Fallin), the Director of the Oklahoma Department of Corrections ("DOC") (Robert Patton), the Warden of the JCCC (Jason Bryant), the State Fire Marshall (Terry Cline), the Commissioner of the Oklahoma State Department of Health (Robert Doke), and several state legislators (Jeffrey Hickman, Brian Bingman, and Clark Jolley). The district court screened Savage's complaint under 28 U.S.C. § 1915A. A magistrate judge issued a recommendation—later adopted by the district court— suggesting that the complaint be dismissed sua sponte.[2] The court held that all claims for damages against the defendants in their official capacities were barred by the Eleventh Amendment, and dismissed those claims without prejudice.[3] It also held that the Governor and legislator-defendants were entitled to absolute legislative immunity against any individual-capacity claims, and dismissed those claims with prejudice. The court dismissed without prejudice all federal claims against the

---

[2] Savage argues that he should not have been subject to the screening provision of § 1915A because he is not proceeding in forma pauperis. We reject this argument. See Plunk v. Givens, 234 F.3d 1128, 1129 (10th Cir. 2000) (section 1915A applies to all prison litigants suing a governmental entity or employee regardless of in forma pauperis status).

[3] Savage does not appeal the dismissal of his official-capacity claims for monetary damages.

4

remaining defendants for failure to state a claim. Having dismissed all federal claims, it declined to exercise supplemental jurisdiction over the state law claims.

Savage timely appealed. Although they did not appear below, we invited defendants to submit a memorandum brief to this court and they have done so.

## II

## A

"We review de novo a district court's conclusion on the question of absolute immunity." Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994). State legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities. Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998). And because "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity," members of the executive branch are also entitled to absolute immunity when they are performing legislative acts. Id. at 54, 55 (quotation omitted).

Savage argues that the Governor and legislators have been complicit in the overcrowding and understaffing in Oklahoma prisons by failing to properly fund them. But choices about prison funding are "discretionary, policymaking decision[s] implicating the budgetary priorities of the [state] and the services the [state] provides." Id. at 55-56. Thus, the legislator-defendants' alleged actions "bore all the hallmarks of traditional legislation," id. at 55, and they are entitled to legislative immunity.

5

The same is true with respect to Governor Fallin as to her alleged failure to prompt the legislature to provide additional funding. See id. (executive official entitled to absolute immunity for quintessentially legislative policymaking decisions). However, Savage also alleges that Fallin has failed to take proper administrative actions to reduce overcrowding, including causing delays in the implementation of programs. Claims based on these administrative actions are not barred by legislative immunity. See Kamplain v. Curry Cty. Bd. of Comm'rs, 159 F.3d 1248, 1252 (10th Cir. 1998) (holding actions that do "not concern the enactment or promulgation of public policy" are not legislative in nature). We thus reverse the district court's dismissal of Savage's § 1983 claim against Fallin based on her alleged administrative failures.[4]

**B**

We review de novo the district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Casanova v. Ulibarri, 595 F.3d 1120, 1124 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Courts do not impose a "probability requirement," but the pleadings must demonstrate "more than a

---

[4] The district court also stated briefly that any discretionary actions made by the defendants were made in their official capacities, and the defendants would thus be entitled to Eleventh Amendment immunity. But Eleventh Amendment immunity does not apply to claims for injunctive relief. See Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1197 (10th Cir. 1998) (claims for prospective relief may be pursued against state officials in either their official or individual capacities under the Ex parte Young doctrine).

6

sheer possibility that a defendant has acted unlawfully." Id. (quotation omitted). We construe Savage's pro se filings liberally. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

**1**

In weighing whether prison conditions violate the Eighth Amendment, we "must be sensitive to the State's interest in punishment, deterrence, and rehabilitation, as well as the need for deference to experienced and expert prison administrators faced with the difficult and dangerous task of housing large numbers of convicted criminals." Brown v. Plata, 563 U.S. 493, 511 (2011). However, we "must not shrink from [our] obligation to enforce the constitutional rights of all persons, including prisoners." Id. (quotation omitted). "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (quotation omitted).

Prison conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347. But conditions of confinement violate the Eighth Amendment if they result in "serious deprivations of basic human needs." Id. These needs include "shelter, sanitation, food, personal safety, and medical care." Ramos v. Lamm, 639 F.2d 559, 566 (10th Cir. 1980). In particular, inmates have a "constitutional right to be reasonably protected from constant threats of violence and sexual assaults from other

7

inmates." Id. at 572. To state an Eighth Amendment claim for failure to protect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Construing his pro se filings liberally, Savage makes two general allegations. First, he claims that staff shortages and overcrowding have strained sanitation facilities, food supplies, prison maintenance, and other programs. The district court concluded that Savage's allegations as to this sub-claim rise merely to the level of discomfort or inconvenience, and are not sufficiently serious to support an Eighth Amendment claim. We agree. Savage has not alleged that these problems have deprived him "of the minimal civilized measure of life's necessities." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998) (quotation omitted). To the extent Savage attempts to rely on indignities suffered by other inmates, he lacks standing to seek redress for injuries committed against others. Swoboda v. Dubach, 992 F.2d 286, 290 (10th Cir. 1993).

Savage also claims that the number of correctional officers overseeing inmates is so low as to constitute a substantial risk to inmate safety. The district court concluded this sub-claim was deficient because it relates to potential dangers posed by overcrowded prisons, but not realized dangers which involve Savage himself. We disagree with this reasoning.

"That the Eighth Amendment protects against future harm to inmates is not a novel proposition." Helling v. McKinney, 509 U.S. 25, 33 (1993). Accordingly, courts may not "deny an injunction to inmates who plainly proved an unsafe, life-

8

threatening condition in their prison on the ground that nothing yet had happened to them." Id. Simply stated, "a remedy for unsafe conditions need not await a tragic event." Id.; see also Ramos, 639 F.2d at 572 (an inmate "does not need to wait until he is actually assaulted before obtaining relief").

Savage discussed the assaults of other inmates in his complaint. But we do not read the complaint as relying on injuries to those inmates, which Savage would lack standing to do. See Swoboda, 992 F.2d at 290. Instead, it appears Savage included these allegations to support the claim that he personally faces an unreasonable risk of physical assault at JCCC.[5] Evidence that the inmate population is "plagued with violence and the fear of violence" may support an Eighth Amendment claim. Ramos, 639 F.2d at 572. And staffing that is insufficient to provide adequate security for inmates and staff may also contribute to a violation. Id. at 573.

In this regard, we conclude that Savage has met his initial pleading burden. He alleges JCCC is plagued by inmate-on-inmate violence, and that he has been threatened with assault. Savage further alleges that only one correctional officer is generally on duty in his open dorm unit housing 230 prisoners, and that at most, one officer monitors 250 inmates during mealtimes. These staffing ratios are similar to those at issue in other cases in which courts found Eighth Amendment violations. See Brown, 563 U.S. at 502 ("As many as 200 prisoners may live in a gymnasium, monitored by as few as two or three correctional officers."); Hutto v. Finney, 437

[5] Savage's allegations regarding violence at other facilities, however, would not bear on Savage's claim that he is endangered at JCCC.

9

U.S. 678, 682 n.6 (1978) ("Although it had 1,000 prisoners, Cummins employed only eight guards who were not themselves convicts."); Coleman v. Schwarzenegger, 922 F. Supp. 2d 882, 930-31 (E.D. Cal. 2009) (describing scenario in which two officers supervise 200 inmates as "extremely dangerous"); Ramos v. Lamm, 485 F. Supp. 122, 141 (D. Colo. 1979) (three prison employees cannot maintain security over 91 inmates housed in various locations), aff'd in relevant part Ramos, 639 F.2d 559.

To be sure, an allegation of prison overcrowding is not per se sufficient to support an Eighth Amendment claim. "Establishing the population at which the State could begin to provide constitutionally adequate [conditions] . . . requires a degree of judgment." Brown, 563 U.S. at 538. "The inquiry involves uncertain predictions regarding the effects of population reductions, as well as difficult determinations regarding the capacity of prison officials to provide adequate care at various population levels." Id.; see also Rhodes, 452 U.S. at 348 (rejecting argument that housing 38 percent more inmates than prison's design capacity violated Eighth Amendment). But Savage alleges that prison officials have made statements acknowledging a link between staffing shortages and a high risk of prison violence. At this preliminary phase, we conclude that Savage has plausibly pled that he is subjected to overcrowding and staffing conditions that pose a substantial risk of serious harm. Farmer, 511 U.S. at 834.

## 2

This conclusion does not end our inquiry. To hold a prison official liable for unconstitutional prison conditions, a plaintiff must show that "the official knows of

10

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Savage "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate"; but he must show "that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. If a risk is "expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it," then a trier of fact may find that the defendant-official had actual knowledge of the risk. Id. at 842-43. Moreover, because § 1983 does not impose vicarious liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

We agree with the district court that Savage has not adequately pled the subjective element of an Eighth Amendment violation as to Fire Marshall Hickman or Commissioner of the Health Department Doke. Savage merely alleges that despite regular inspections of the JCCC, these defendants have not taken appropriate action to enforce the law. This allegation does not plausibly suggest that the heads of these agencies were personally aware of conditions at JCCC giving rise to a substantial risk that inmates would suffer serious harm.

We reach the opposite conclusion as to Warden Bryant and DOC Director Patton. Savage cited statements made by Patton noting that prison understaffing has

11

created dangerous situations in Oklahoma. He also claims that Patton personally made the decision to transfer inmates from county jails to DOC custody, causing overcrowding at JCCC. As to Bryant, Savage alleges that he has failed to appropriately discipline inmates and cites to public statements from the previous JCCC warden decrying understaffing at the facility. See Farmer, 511 U.S. at 842 (subjective element may be satisfied by showing that problems were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past"). Given that deliberate indifference may be demonstrated through "circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious," see id. (citation omitted), we conclude Savage has satisfied his initial pleading burden as to the subjective prong.[6]

## C

The district court declined to exercise supplemental jurisdiction over Savage's state law claims.[7] In their memorandum brief, defendants argue that Savage's state law claims are barred by the Oklahoma Governmental Tort Claims Act. We leave that

---

[6] The district court did not consider whether Savage adequately alleged these elements as to Governor Fallin. We leave that issue to the district court to address in the first instance on remand. We similarly do not reach any other defenses or bars to liability that may arise on remand.

[7] Savage argues that in addition to a state law claim for intentional infliction of emotional distress, he also advances an independent federal claim, citing Estate of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 851 (10th Cir. 2005). But Estate of Trentadue merely allowed an Oklahoma state law claim for intentional infliction of emotional distress to proceed under the Federal Tort Claims Act. Id. at 852, 855. We consider only Savage's state-law claim.

12

argument, and any other issues not considered in this order and judgment, for consideration by the district court in the first instance.

## III

The district court's dismissal of all claims against Hickman, Bingman, and Jolley is **AFFIRMED**.  Its dismissal of Savage's § 1983 claims against Cline and Doke is **AFFIRMED**.  And the district court's dismissal of all official capacity claims for damages is **AFFIRMED**.  We **REVERSE** the court's dismissal of the claims against Governor Fallin to the extent they rest on her administrative actions.  And we **REVERSE** the dismissal of Savage's § 1983 claims against Bryant and Patton.  We **REMAND** for further proceedings not inconsistent with this order and judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge

13