In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2660

SCOTT HILDRETH,

*Plaintiff-Appellant,*

*v.*

KIM BUTLER, LORI OAKLEY, and
WEXFORD HEALTH SOURCES, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:15-cv-00831-NJR-DGW — **Nancy J. Rosenstengel**, *Chief Judge*.

On Petition for Rehearing and Rehearing En Banc

AUGUST 19, 2020

Before SYKES, *Chief Judge*, FLAUM, EASTERBROOK, KANNE, ROVNER, WOOD, HAMILTON, BARRETT, BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

PER CURIAM. On consideration of plaintiff-appellant's petition for rehearing and rehearing en banc, filed on June 16,

2020, a majority of the panel voted to deny rehearing. A judge in regular active service requested a vote on the petition for rehearing en banc. A majority of judges in regular active service voted to deny the petition for rehearing en banc. Judges Rovner, Wood, Hamilton, and Scudder voted to grant the petition for rehearing en banc.

Accordingly, the petition for rehearing and rehearing en banc is DENIED.


HAMILTON, *Circuit Judge*, joined by ROVNER, WOOD, and SCUDDER, *Circuit Judges*, dissenting from denial of rehearing en banc.

This case poses important questions about *Monell* liability in the context of prison healthcare. We may assume that convicted prisoners deserve their punishment in prison, but the Eighth Amendment imposes limits on that punishment. In important ways, prisoners are dependent and vulnerable. Their custodians may not act with deliberate indifference toward serious dangers to their prisoners or to their serious health needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Custodians who learn of such dangers or needs must respond reasonably to them, whether the threat comes from violence at the hands of other prisoners, *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994), hazards in the prison environment, *Helling v. McKinney*, 509 U.S. 25, 33 (1993), suicide, W*oodward v. Correctional Medical Services*, 368 F.3d 917, 929 (7th Cir. 2004), or injury, illness, or pain. *Estelle*, 429 U.S. at 104–05. See also *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011) (*Farmer*'s requirement of a reasonable response was clearly established law).

The question worth deciding en banc in this case is whether plaintiff Hildreth has come forward with evidence sufficient to find that defendant Wexford acted with deliberate indifference to his and other prisoners' serious medical needs by establishing unreasonable systems ("policies" in the language of *Monell*) for refilling and renewing prescriptions for needed medicines. See *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). As the health care contractor for the prison, Wexford of course knew of the need for timely and reliable prescription refills and renewals. As explained in the panel dissent, a reasonable jury could also find that Wexford failed to take reasonable steps to meet that need. *Hildreth v. Butler*, 960 F.3d 420, 435 (7th Cir. 2020) (Hamilton, J., dissenting). Wexford designed and implemented systems that left plenty of room for human error or even malice, but without alerts or safeguards to learn of and correct inevitable problems with prescription refills and renewals. As a result, plaintiff Hildreth repeatedly suffered easily avoidable pain and debilitation, for days or more than a week at a time, while waiting for the medicine he needed for his Parkinson's disease.

The broader legal question posed here is whether the panel majority decision is consistent with our recent en banc decisions on *Monell* liability in *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 382 (7th Cir. 2017) ("There is no magic number of injuries that must occur before [defendant's] failure to act can be considered deliberately indifferent."), and *J.K.J. v. Polk County*, 960 F.3d 367, 380 (7th Cir. 2020) ("'in a narrow range of circumstances,' deliberate indifference could be found when the violation of rights is a 'highly predictable consequence' of a failure to provide officers what they need to confront 'recurring' situations"), quoting *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997), as well as

whether it is consistent with *Woodward v. Correctional Medical Services*, 368 F.3d 917, 929 (7th Cir. 2004) ("CMS does not get a 'one free suicide' pass.").

In both *Glisson* and *J.K.J.*, we held that plaintiffs were entitled to a jury trial or verdict on their *Monell* claims without requiring proof of a minimum number of previous failings. In both cases, the *Monell* defendant was on notice of a serious risk of harm to certain prisoners. In *Glisson* it was the risk to patients with complex disease combinations if there were no effort to coordinate care. In *J.K.J.*, it was notice of the risk of sexual abuse by guards. Both *Glisson* and *J.K.J.* applied two key lessons from *Farmer v. Brennan*. First, knowledge of a danger or serious health need may be inferred from circumstantial evidence, including the obviousness of the risk or need. 511 U.S. at 842. Second, a state actor with actual knowledge of such a danger or need is expected to take reasonable, though not perfect, steps to address the danger or need. *Id*. at 843–45.

More generally still, this case poses the question whether courts need to channel *Monell* claims into separate and distinct categories depending on how the plaintiff characterizes his claim, whether as one based on a "pattern" of violations showing an unconstitutional custom or as one based on a more direct challenge to an explicit policy of the governmental or corporate defendant. The panel majority erred by adhering too rigidly to these categories as separate channels and failing to engage with the policy problem and holding of *Glisson*. As a result, the panel majority allowed Wexford to treat the case as only a "pattern" case, which in turn allowed Wexford to defend itself by saying that it had not known—*and had no way to know*—of the repeated acts of individual oversight or malice that delayed Hildreth's medicine. That defense was

actually an unintentional admission that Wexford's systems (i.e., its policies) for prescription refills and renewals were themselves unreasonable. They were unreasonable in the face of inevitable human error precisely because they did not include means for monitoring whether or not urgent medical needs were being met.

The categories for *Monell* cases can be helpful, but we should not let them distract us from the central issue. Regardless of how the claim is categorized, "The central question is always whether an official policy, however expressed (and we have no reason to think that the list in *Monell* is exclusive), caused the constitutional deprivation." *Glisson*, 849 F.3d at 379.

I respectfully dissent from the denial of rehearing en banc.