**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,        )
                                      )

        Plaintiff,        )
                                      )   **I.D.: 91009844DI**

        v.        )
                                      )

CHRISTOPHER R. DESMOND,  )
                                      )

        Defendant.

## ORDER ON DEFENDANT'S MOTION FOR MEDICAL RELEASE

Now this 21st day of October 2020, upon consideration of Defendant Christopher Desmond's ("Defendant") Motion for Medical Release, the sentence imposed upon Defendant, and the record in this case, it appears to the Court that:

1. In 1992, Defendant was convicted of ten counts of Robbery in the First Degree, ten counts of Possession of a Deadly Weapon During the Commission of a Felony, three counts of Possession of a Deadly Weapon by a Prohibited Person, two counts of Conspiracy in the Second Degree, three counts of felony Theft, and one count of Escape in Third Degree.

2. In January of 1993, Defendant was sentenced to 78 years of Level V time. Defendant's direct appeal of his sentence and all subsequent collateral appeals were affirmed. Defendant has been continually incarcerated since October of 1991.

3. Defendant has submitted two separate Motions which are currently before the Court: a self-styled Memorandum of Law requesting relief under 11 Del. C. 6536 (c) and a Motion for medical release due to the ongoing COVID-19 pandemic. This Order will address both Motions.

4. Defendant first requests relief from this Court based on 11 Del. C. 6536 (c). The exact nature of Defendant's grievance and the relief Defendant is seeking is not completely clear to the Court based on the Memorandum that Defendant submitted with this Motion. So far as the Court can tell, it appears that Defendant is requesting an Order requiring the Department of Corrections to allow Defendant to have vitamin supplements shipped to him at the Vaughn Correctional Center and to increase the amount of fresh fruits and vegetables he receives for his daily meals in order to treat a self-diagnosed medical condition.

5. Defendant has attached to his Memorandum a Department of Corrections Grievance Form indicating that the he was misdiagnosed with gout by a member of the Department of Corrections medical staff in July of 2020. The Grievance Form indicates that Defendant has concluded that that he has "high acidity in [his] kidneys" due to "lack of water in [his] diet" rather than gout. The Grievance Form states that Defendant arrived at this conclusion based on his own research and consultations with his sister and cousin, who are a nurse practitioner and a physician, respectively.

6. Defendant has cited 11 Del. C. § 6536 (c) as the basis for his request. Defendant claims that the intent of this Code provision is to allow inmates to pay for "medications and treatments at their own expense[]." Defendant appears to be suggesting that this Code section requires the Department of Corrections to allow him to receive vitamin supplements because he has determined that he would like to pursue this course of treatment for his self-diagnosed medical condition. The text of 11 Del. C. § 6536 (c), however, does not contain the words quoted in Defendant's Memorandum or words to a similar effect. Instead, the text of the statute describes how the Department of Corrections debits inmates for medical services rendered during their period of

incarceration – it does not require the Department to allow Defendant to receive *any* treatment regimen he chooses. Defendant's filing also contains a medical report by a registered nurse who examined Defendant on behalf of the Department of Corrections, who concluded that there is "no medical indication that [Defendant] needs to have vitamins sent into [the] facility."

7. The provision of the Delaware Code cited by Defendant does not require that he receive any regimen of medical care he chooses, and a medical professional employed by the Department of Corrections has already concluded that there is no medical basis for Defendant to receive the relief he has requested here. A prisoner has no right to choose a specific form of medical treatment so long as the treatment provided by the Department of Corrections is reasonable.[1] Accordingly, Defendant's request is **DENIED**.

<u>Motion to Release Defendant from Incarceration</u>

8. Next, Defendant has submitted an additional Motion requesting a release from incarceration and onto Level IV supervision or home arrest due to the ongoing COVID-19 pandemic. Defendant cites two separate grounds for a release from incarceration: First, that the COVID-19 pandemic represents an "extraordinary circumstance" justifying his release from incarceration under Criminal Rule 35.[2] Second, Defendant argues that his continued incarceration represents a violation of his rights under the Eighth Amendment of the United States Constitution.

9. Defendant's Motion indicates that he is 57 years old and has "developed several health-related" conditions that have left him "vulnerable to the COVID-19 virus." Defendant's

---

[1] *Davis v. Williams*, 572 F.Supp.2d 498 (2008).
[2] While Defendant's Motion does not explicitly mention Criminal Rule 35, Defendant has cited the "extraordinary circumstance" language of Rule 35(b) and clearly intends a modification in his sentence controlled by that Rule. Accordingly, this portion of his Motion will be treated as a Rule 35 argument.

Motion does not name any specific medical conditions that he suffers from, and only indicates that he experiences "health-related" problems generally.

10. Defendant's first basis for a release from incarceration – that the COVID-19 pandemic has created "extraordinary circumstances" justifying his release – is not persuasive. Under Rule 35(b), an "extraordinary circumstance" is defined as a "highly unusual set of facts" found "when an offender faces some genuinely compelling change in circumstances that makes a resentencing urgent."[3] In Rule 35(b) motions, "[a] heavy burden is placed on the inmate to establish 'extraordinary circumstances' in order to uphold the finality of sentences."[4]

11. Defendant indicates that due to his age and health conditions combined with the fact that he is housed in close proximity to other inmates, he is vulnerable to the COVID-19 virus. This Court has determined that the ongoing COVID-19 pandemic by itself does not constitute an extraordinary circumstance sufficient to overcome the heavy burden placed on the Defendant on a Rule 35(b) motion.[5] Defendant has failed to identify any specific medical issues or health conditions that would make him uniquely or particularly susceptible to COVID-19. If Defendant's medical situation changes in a manner that warrants a reduction in sentencing, he may file an application with the Department of Corrections under 11 Del. C. § 4217 rather than another Rule 35 application with the Superior Court.[6] At this juncture, Defendant has not identified an

---

[3] *State v. Lindsey*, 2020 WL 4038015, at *2 (Del. Supr. Jul. 17, 2020).
[4] *Id.*
[5] See *State v. Hampton*, 2020 WL 4284327 (Del. Supr. Jul. 27, 2020) ("As this Court has recently and oft noted, no special early release rule or procedure has been created to address the current COVID-19 health crisis... Just incanting 'COVID-19' is inadequate to shoulder the heavy burden . . . to establish 'extraordinary circumstances' under Rule 35(b).")
[6] See *Id*, at *2 ("[If an inmate's medical circumstances change in a way that] warrants sentence reduction, then the proper vehicle to deliver such relief is an application by the Department of Corrections under 11 Del. C. 4217. . . [A]n inmate's emergent medical situation is not the stuff of which a claim of 'extraordinary circumstances' is made [under Rule 35].")

extraordinary circumstance that warrants a reduction or modification of his sentence, and this portion of his Motion is **DENIED**.

12. Defendant next claims that his continued incarceration during the COVID-19 pandemic represents a violation of the Eighth Amendment of the United States Constitution.

13. The Eighth Amendment applies to conditions of a prisoner's confinement that are not formally imposed as a sentence for a crime.[7] In order to have standing to assert such a claim, Defendant must demonstrate that he has a serious medical need which has been ignored by the Department of Corrections.[8]

14. Defendant's Motion does not indicate that he has been denied access to medical care or that the Department of Corrections has interfered with any prescribed medical treatment as a result of the Department of Corrections' response to the COVID-19 pandemic.[9] Likewise, Defendant's motion does not indicate that he has a serious medical need which has been disregarded by the DOC. Instead, Defendant's Motion only indicates that he "suffers from several health issues" but does not identify any specific health issues that would leave him unique susceptible to COVID-19. Accordingly, Defendant lacks standing to assert an Eighth Amendment claim.[10] Defendant's motion with respect to his Eighth Amendment claim is **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's foregoing Motions are **DENIED**.

---

[7] *See e.g. Helling v. McKinney,* 509 U.S. 25, 32 (1993).

[8] *State v. Bednash*, 2020 WL 2917305, at *1 (Del. Supr. Jun 3. 2020)(finding that incarcerated plaintiff lacked standing to assert an Eighth Amendment claim because plaintiff failed to establish that he had a serious medical need that was disregarded by the Department of Corrections.)

[9] Defendant's Motion also indicates that he is currently unable to participate in educational or mental health counseling as a result of the Department of Corrections' response to the COVID-19 pandemic. This Court has previously held that a defendant's inability to participate in rehabilitative programs is not a basis for an Eighth Amendment claim. See *Id.*

[10] *Id.*, 2020 WL 2917305, at *1 (Del. Supr. Jun. 3, 2020).

Francis J. Jones, Judge