> **NONPRECEDENTIAL DISPOSITION**
>
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 21, 2019[*]
Decided November 26, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

Nos. 19-1921 & 19-2231

| | |
|---|---|
| JONATHAN VIDLAK, | Appeals from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of |
| | Illinois. |
| | |
| *v.* | No. 17-CV-160-JPG-GCS |
| | |
| JUSTIN COX, | J. Phil Gilbert, |
| *Defendant-Appellee.* | *Judge.* |

## O R D E R

Jonathan Vidlak, a federal inmate, sued Justin Cox, his supervisor at an electrical shop in prison, for violating the Eighth Amendment. See *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Vidlak contends that Cox was deliberately indifferent to an unreasonable risk of serious injury when he ordered a team of prisoners to crush fluorescent bulbs containing mercury in an unventilated

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

room. The district court granted summary judgment for Cox. Because Vidlak presented no evidence that Cox knew of an unreasonable risk of serious injury, we affirm.

Vidlak worked in the electrical shop of the federal prison in Marion, Illinois. The events are disputed; we present the version of the record that favors Vidlak. *Arnett v. Webster*, 568 F.3d 742, 757 (7th Cir. 2011). One day in 2015, Cox threw cinderblocks onto boxes of 8-ft long fluorescent light bulbs in the shop, breaking some of them. From the prison's published protocol for bulb disposal, entitled "What to do if a Lamp Breaks," Cox had reason to know that the bulbs contained small amounts of mercury. Based on procedures that the Environmental Protection Agency recommends, the protocol also advised staff and inmates to leave the immediate area for at least 15 minutes if a bulb broke; explained that the prison has special mercury cleanup kits and protective gear; and instructed that, because of a risk of mercury contamination, vacuums were not to be used to clean up broken glass. The protocol did not describe any health consequences, or their associated risk levels, from exposure to mercury.

Shortly after the breakage, Cox ordered a team of prisoners to dispose of the bulbs by breaking the rest of them and throwing them all into trash bins. The prisoners obeyed, breaking approximately 25 boxes of 8-ft bulbs and creating a white cloud of glass dust and mercury vapor that engulfed the shop in the process. Vidlak did not personally participate in the disposal, but he was present and could not leave. He asked for a face mask, but the team leader told him he was "shit out of luck." A few days later, Cox ordered other prisoners, this time including Vidlak, to bring the bins containing the crushed glass to the prison's kitchen and dispose of the glass shards in food compactors. A prison employee stopped them on the way to the kitchen, yelling that Cox was "not supposed to be doing that" and that he was "being stupid." Cox then ordered the prisoners to wheel the bins back into the shop and scoop glass shards into garbage drums with dustbins. In the process, they created another giant white cloud of dust. Vidlak fears a future injury from this exposure, but three years after the exposure, no physician had diagnosed him with mercury poisoning, told him that he would need treatment in the future, or identified any associated medical problems.

After exhausting his administrative remedies by filing grievances about these two incidents, Vidlak turned to federal court. After reviewing his complaint, the district judge ruled that Vidlak adequately alleged that Cox exposed him to dangerous and harmful levels of mercury in violation of the Eighth Amendment. Vidlak then asked the court to recruit counsel who could help him gather evidence (including a video recording of the incidents that he fears the defendants may have destroyed). The court

denied his request, explaining that he appeared competent to litigate the suit on his own because his filings were well-written and easy to comprehend.

The case proceeded to discovery and summary judgment. During discovery, in response to the court's scheduling order, Vidlak wrote that he "had no medical or other testing to determine the severity of the mercury poisoning he suffered at the hands of defendant Cox." He therefore later renewed his request for counsel, arguing that a lawyer could help him obtain an expert. After discovery, the district court denied that request and granted Cox's motion for summary judgment. The court acknowledged the common knowledge that mercury is toxic. But, the court continued, Vidlak did not present sufficient evidence that he was exposed to an unreasonably high amount of it, that he had sustained injuries because of it, or that the exposure necessarily created a risk of serious future health complications.

On appeal, Vidlak contends that the district court impermissibly decided disputed issues of material fact in Cox's favor and, by denying his request for counsel, unreasonably kept him from obtaining the scientific evidence he needed. We review a grant of summary judgment de novo. *Arnett*, 796 F.3d at 746. The Eighth Amendment guards against deliberate indifference to the "unnecessary and wanton infliction of pain," *Estelle v. Gamble,* 429 U.S. 97, 104 (1976), and protects prisoners from needlessly inflicted current and future harms. *Helling v. McKinney,* 509 U.S. 25, 33 (1993). To prevail on his claim of deliberate indifference, Vidlak must present evidence sufficient to persuade a rational jury of two things: first, that Cox exposed him to an "unreasonable risk of serious damage to his future health," *id.* at 35; see *Henderson v. Sheahan,* 196 F.3d 839, 847 (7th Cir. 1999); and second, that Cox "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1993).

We focus on the second element—Cox's subjective knowledge of the risk of harm. By doing so, we need not decide whether the district court correctly ruled that, under the first step, Vidlak did not present sufficient scientific evidence of the risk of future harm. For even if we assume—as Vidlak urges us to do—that he satisfied the objective part of his claim, summary judgment was proper because he presented no evidence that Cox subjectively knew that exposure to the amount of mercury released here posed an excessive risk of future injury. See *Klebanowski v. Sheahan,* 540 F.3d 633, 639 (7th Cir. 2008).

The information before the district court was not sufficient to permit a jury to infer that Cox knew that Vidlak faced a substantial risk of serious injury. Cox knew only that the prison had an internal protocol for the disposal of broken fluorescent bulbs and

that any (unspecified) risk of (unnamed) injury from mercury exposure dissipates 15 minutes after breakage. The protocol itself does not describe, either qualitatively or quantitatively, what the risk is. And although the protocol alludes to recommendations from the Environmental Protection Agency, those recommendations too are devoid of information about the magnitude of any risks. *Cleaning Up a Broken CFL*, EPA, https://www.epa.gov/cfl/cleaning-broken-cfl#important (last visited Nov. 6, 2019). Likewise, the factsheets to which Vidlak points us from the Occupational Safety and Health Administration refer only to possible symptoms from exposure to mercury, not to the risk of exposure. See *OSHA Fact Sheet: Protecting Workers from Mercury Exposure While Crushing and Recycling Fluorescent Bulbs*, U.S. Dep't of Labor: OSHA, https://www.osha.gov/Publications/mercuryexposure_fluorescentbulbs_factsheet.html (last visited Nov. 6, 2019). Just as Vidlak needed an expert to understand the risk levels to which he was exposed, so too did Cox. And without evidence that Cox knew the size of the risk, a jury could not find that he disregarded a risk level that was "excessive."

Vidlak offers three responses, but none persuades us. First, he observes that, because the cleanup protocol discusses the breakage of a single bulb, Cox must have known that breaking *several* bulbs in a closed room created an excessive risk of injury. But because the protocol does not describe the risk levels from a single broken bulb, a reasonable jury could not infer from it that Vidlak knew that multiple breakages posed an unreasonable risk of future harm. Second, Vidlak argues that the protocol alerted Cox to *some* risk of injury, and because Cox had no good reason to violate the protocol, he inflicted an "excessive" risk on Vidlak. But even Cox's inexplicable disregard of a known risk is not enough to violate the Eighth Amendment without evidence showing that he was also aware that risk was "substantial" and "reasonably certain" to injure. See *Farmer*, 511 U.S. at 837; *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015); *Klebanowski*, 540 F.3d at 639. Conscious disregard for a prison's internal rules, though deeply troubling, does not by itself amount to deliberate indifference. See *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996). Third, Vidlak suggests that, in granting summary judgment to Cox, the district court contradicted its earlier ruling that Vidlak had adequately alleged a claim. But to survive summary judgment, Vidlak had to do more than to simply *allege* misconduct; he had to offer evidence allowing a reasonable jury to conclude that Cox was deliberately indifferent. See *Gevas*, 798 F.3d at 481.

Finally, Vidlak urges that, by denying his requests for counsel, the district court unreasonably impaired his ability to obtain the expert that he needed. But Vidlak did not need an expert to present evidence of Cox's actual knowledge of the risk of future

harm. We thus see no reasonable likelihood that a scientific expert would have made a difference in this case. See *Pruitt v. Mote,* 503 F.3d 647, 659 (7th Cir. 2007) (en banc).

AFFIRMED